**BRITISH AMERICAN INSURANCE COMPANY, Appellant,**

v.

**Raymond G. HOWARTON, Appellee.**

**No. 01–93–00370–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 3, 1994.

---

Dean G. Pappas, Janet Giessel Townsley, Phillips & Akers, Houston, for appellant.

Dale W. Felton, Felton & Associates, Houston, for appellee.

Before WILSON, COHEN and ANDELL, JJ.

## OPINION

WILSON, Justice.

Appellant, British American Insurance Company, appeals the jury verdict in favor of appellee, Raymond Howarton, in a workers' compensation case.[1] Appellee was injured at his job as a construction foreman for Austin Bridge Company. The Texas Industrial Accident Board awarded appellee damages for an "injury or occupational disease" occurring in the course and scope of his employment. This suit is an appeal from the board award. Appellant presents three points of error for our review: (1) the court did not have juris-

---

1. Appellee's claim is governed by the law in effect before the 1989 enactment of the Texas Workers' Compensation Act. Act of December 13, 1989, 71st Leg., 2d C.S., ch. 1, § 1718(c), 1989 Tex.Gen.Laws 1, 122.

diction of appellee's occupational disease claim; (2) appellant should have been permitted to admit videotape evidence; and (3) there is no evidence or factually insufficient evidence to support the jury's affirmative finding of appellee's occupational disease. We affirm.

Howarton began working for Austin Bridge Company in January 1986, as a construction foreman. He and his crew built concrete panel walls for the Hardy Toll Road, made from prefabricated panel components. He had been working particularly long hours in June 1986, because of an engineering error that required correction. Heavy rains also slowed construction.

Howerton was first aware of a problem with his back on the morning of June 13, 1986. He was leaning over talking to an inspector who was sitting in a car. Ten minutes later, when he tried to straighten up, he was unable to do so and experienced severe pain in his back. A coworker took him to a nearby hospital where he was examined and released.

Appellee filed a claim with the Industrial Accident Board (IAB) on June 24, 1986. The board awarded damages based on this claim on December 10, 1986. Appellee appealed this award to the district court. Plaintiff's (appellee's) original petition, filed December 19, 1986, included only a claim for accidental injury. Appellee filed his first amended petition three months before trial, which alleged, in the alternative, that appellee suffered damages because of an occupational disease.

**Jurisdiction**

■ Appellant argues, in its first point of error, that the trial court did not have jurisdiction of appellee's occupational disease claim. As a jurisdictional prerequisite to the appeal of a workers' compensation award from the Industrial Accident Board in district court, a plaintiff must plead and prove his claim was presented to the industrial accident board. *Johnson v. American Gen. Ins. Co.,* 464 S.W.2d 83, 84 (Tex.1971). There must be an identity of the injury or condition between that presented to the board and that asserted in the district court. *Id.* at 84.

Appellant argues that only a claim for injury was presented to the IAB, and no claim for occupational disease was presented. Appellee completed a form entitled "Notice of Injury or Occupational Disease and Claim for Compensation." This form was completed June 24, 1986. In the space on this form requesting "date of first knowledge disease was work related," appellee filled in "6/13/86," the date he was taken to the hospital after he was unable to stand up. The space requesting "Date last exposed to cause of disease" was not completed. In response to the question requesting a description of the "Accident or Occupational Disease and Your Injury," appellee responded, "I was bending over to show something or pick up something and could not get back up. I injured my back, chest and body generally."

The IAB awarded Howarton $5,059.91 on December 10, 1986. In the award, the board made a finding that, "on the date of injury, the said employee sustained an injury or occupational disease in the course of employment with said employer." This finding was on a preprinted form, and the appropriate finding was marked by the board.

■ A claim with the IAB should identify the injury or condition and serve as the basis for proper investigation, hearing, and determination of the claim. "The notice must describe an injury or a condition that is potentially compensable; and on appeal there must be, at least in general, an identity of the injury or condition presented to the Board." *Johnson,* 464 S.W.2d at 84. The claimant is not required to know the legal classification of the injury, only to report the facts so that a proper investigation may be made. *Id.* at 86.

The forms promulgated by the IAB indicate an intention to avoid distinctions between occupational disease and injury. The forms consistently refer to "the accident or occupational disease," rather than making a distinction between the two. This intention is particularly important because often it is the injured worker that completes the board's forms soon after the injury without benefit of legal counsel.

Appellant relies on *Treybig v. Home Indemnity Co.*, 632 S.W.2d 896 (Tex.App.— Dallas 1982, writ ref'd n.r.e.), arguing that it supports the conclusion that appellee did not present the occupational disease claim to the Board. In *Treybig*, the worker suffered a hip injury compensated in 1976 under workers' compensation. In 1978, Treybig asserted he suffered a separately compensable occupational disease causing hip injury. Treybig described the injury as hurt hip, and listed the date of injury in 1978. The blanks asking for the date of the first distinct manifestation of the disease and date last exposed to the hazards of the disease were left blank. Before the board, the insurance company denied a new injury in 1978, contending that any new disability was caused by the 1976 injury. The Industrial Accident Board denied the claim. *Id.* at 897. At the trial court, Treybig's petition alleged occupational disease. *Id.* at 897–98. The court held, that on these facts, the claim form did not properly apprise the insurance company Treybig was claiming compensation for an occupational disease. *Id.* at 898.

■ The case at hand is distinguishable from *Treybig*. Appellee did give the date of the first knowledge of the occupational disease. Appellee described generally what he was doing when he first discovered there was a problem with his back, rather than simply stating, "hurt back." More importantly, in *Treybig*, the patient had a previous work-related back injury. The facts of *Treybig* indicate that the complaint to the board was related to the previous injury, but this relationship was not revealed. By not revealing an ongoing history, the insurance company was not fairly apprised that he suffered an occupational disease. In this case, appellee fairly apprised the insurance company of the facts surrounding the onset of the occupational disease.

Based on these facts, the insurance company was properly apprised of facts that could indicate a compensable occupational disease. We overrule appellant's first point of error.

**Videotape Evidence**

Appellant's second point of error argues that a videotape was improperly excluded. A pretrial order was entered in this case requiring each party to provide, "a list of exhibits to be offered by each party." The court instructed that each of these exhibits "shall be marked and exchanged with stipulations as to authenticity and admissibility."

Appellant called James Townsend, an investigator who had observed appellee doing various physical tasks and videotaped these observations, to testify. Appellee objected on two grounds: (1) the proper predicate had not been established, and (2) the videotape was not listed as an exhibit in the pretrial order. The trial court refused to allow the jury to see the videotape. Townsend described what he saw when he investigated appellee, and stated that this was also recorded on the video. Appellant's counsel argues he was not required to list the video in the pretrial order because he was not planning on offering the video as an exhibit, but was merely planning on using it as a demonstrative aid.

■ Reversal based on the exclusion of evidence requires a showing that the trial court's ruling was erroneous, and the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81 (b)(1); *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 837 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). The exclusion of cumulative evidence is not reversible error. *Reina v. General Accident Fire & Life Assurance Co.*, 611 S.W.2d 415, 417 (Tex. 1981).

■ The videotape should have been listed in response to the pretrial order requesting a list of exhibits to be offered by each party. Appellant argues it was not planning on offering it as an exhibit, but merely showing it to the jury, without allowing them to take it to the jury room. However, for the jury to consider the video, it must be admitted into evidence. Evidence is either the testimony of a witness under oath, or an exhibit that has been proven authentic. The video in this case is an exhibit. To be admitted into evidence it should have been be offered as evidence, at which time the trial court could decide whether the exhibit is admissible.

Clearly, the pretrial order requested a list of exhibits to be offered as evidence. Appellant did not comply with the order when he did not list the videotape in response to the pretrial order.

One of the purposes of the pretrial order is to aid in the orderly disposition of cases. Certainly, one way this is done is by preventing trial by ambush. *See Gutierrez v. Dallas Indep. Sch. Dist.,* 729 S.W.2d 691, 693 (Tex. 1987) (discussing discovery). Had the video been properly listed as an exhibit, appellee would have had an opportunity to examine the video, test its accuracy and the methods used to make it, and possibly prepare an alternative video.

Appellant argues that the exclusion of the video amounted to an impermissible sanction because it did not have notice of the sanction, and because the exclusion of the evidence amounts to an impermissible "death penalty" sanction. Inherent in a court's ability to issue orders is a court's authority to enforce those orders. TEX.R.CIV.P. 166 (such order when issued shall control the subsequent course of the action, unless modified at the time of trial to prevent manifest injustice.); TEX.GOV'T CODE ANN. § 21.001(a) (Vernon 1988).

■ The exclusion of the videotape because it was not listed in the pretrial order is not an impermissible sanction. Appellant argues the exclusion of this videotape amounted to a "death penalty" sanction because the exclusion of the videotape precluded the presentation of appellant's case on the merits. *See TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913, 917–18 (Tex.1991). However, appellant was permitted to question the investigator before the jury. While it is true the videotape may have been more persuasive, the exclusion of the videotape did not preclude the presentation of appellant's case on the merits. Therefore, we do not consider whether this penalty was impermissible under the standards set out in *TransAmerican* for death penalty sanctions. We find the trial court did not abuse its discretion in refusing to allow appellant to use the video because it was not listed in response to the pretrial order.

## Sufficiency of the Evidence

Appellant argues in its third point of error that there is no evidence or insufficient evidence to support the jury finding of an occupational disease.

■ In deciding a no evidence point of error, we consider only the evidence and inferences tending to support the verdict, and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1988, no writ). If there is more than a scintilla of evidence supporting the verdict, we must overrule the no evidence point of error. *Sherman,* 760 S.W.2d at 242.

■ In reviewing a factual sufficiency point of error, we examine all the evidence, both supporting and against the verdict. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Otis Elevator,* 749 S.W.2d at 923. We set aside a jury finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Lofton,* 720 S.W.2d at 805; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We review the entire record to determine if the jury finding is against the great weight and preponderance of the evidence. *Cain,* 709 S.W.2d at 176.

The jury charge defines occupational disease as "any disease, condition of the employment, or work activity that causes damage or harm to the physical structure of the body and that gradually develops and is not traceable to a definite time, place, and cause." The definitions further define occupational disease to include, "damage or harm to the physical structure of the body caused by repetitious physical traumatic activities extending over a period of time."

■ We will first examine all the evidence to determine whether there is factually sufficient evidence to support the jury verdict. There is evidence that appellee worked long hours before his injury and often lifted heavy objects and exerted himself physically. Two members of appellee's work crew, Richard Borque and James Birchfield, each testified

appellee often was involved in heavy lifting, including lifting pumps and tools off trucks. Appellee also testified he often manipulated the large concrete panels using a crowbar to position them correctly. Borque and appellee each testified appellee regularly worked 12–hour days, and appellee, corroborated by his employment records, testified he often worked weekends and holidays. However, Greg Matthews, the inspector to whom appellee was talking when he felt pain, and Vernon French testified that cranes were used for heavy lifting.

There is evidence appellee was working particularly hard the week before he first realized there was a problem with his back. A concrete wall had to be moved, and the crew was working overtime to move the wall within the week. Additionally, there was heavy rain at the job site, which required the rainwater to be pumped out.

Appellant argues the evidence indicates appellee suffered an injury rather than an occupational disease. Appellant points to the testimony of appellee, Birchfield, Borque, and Matthews to show that they all believed appellee had been injured at a definite time and place, and by a definite cause. We find this argument unpersuasive. The very nature of an occupational disease is that there must be an onset of symptoms. A inference could be made from this evidence that the onset of symptoms is what each of these witnesses described, rather than an actual injury traceable to a specific time.

Appellant also indicates that no medical doctor testified appellant suffered from an occupational disease or repetitive physical traumatic activity. Doctor Pam Kirshner's records indicate the doctor diagnosed appellant as possibly suffering from lumbar disk disease. These records indicate appellee has suffered a sprain at some point. Dr. Rampoldi testified appellee did not report any lifting or special work accompanying the onset of pain, but he had been working extra time to drain water from the job site. Dr. Walter testified the injury occurred in 1986 when doing heavy lifting. Dr. Bar–Sela indicated appellee reported he injured his back while crouching and turning about.

While it is true no doctor specifically stated appellee suffered from an occupational disease or repetitive physical traumatic activity, such a reasonable inference could be drawn from this medical testimony. The statements by the doctors that the injury was suffered while lifting heavy objects at work, combined with the testimony from those witnesses at the job site that appellee worked hard and lifted heavy objects regularly, is sufficient evidence to support the jury finding of occupational disease.

In examining all the evidence, the great weight and preponderance of the evidence supports the jury verdict. Because we find the evidence factually sufficient to support a jury finding of occupational disease, we necessarily find the challenge to the legal sufficiency of the evidence without merit. Clearly, the above summary of the evidence demonstrates there is more than a scintilla of evidence to support the verdict. Accordingly, we overrule appellant's third point of error.

Finding no reversible error, we affirm the judgment of the trial court.