Alan D. BARIBEAU, M.D., and Alan D. Baribeau, M.D., P.A., Individually and d/b/a Cataract and Laser Institute, and Center for Laser Enhancement, Appellants,

v.

Lynn GUSTAFSON, Appellee.

No. 04–01–00732–CV.

Court of Appeals of Texas, San Antonio.

March 12, 2003.

Diana L. Faust, R. Brent Cooper, Ashley E. Frizzell, Cooper & Scully, P.C., Dallas, Nik A. Mimari, Richard A. McNitzky, Patterson & Wagner, L.L.P., San Antonio, for Appellant.

Jeffrey Dean Powless, James Daniel George, The Law Offices of Powless & George, P.C., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

Opinion by CATHERINE STONE, Justice.

Appellants Alan D. Baribeau, Alan D. Baribeau, M.D., P.A., individually and doing business as the Cataract and Laser Institute, and the Center for Laser Enhancement (collectively referred to as Baribeau) filed a motion for rehearing of our opinion issued November 27, 2002. *See Baribeau v. Gustafson,* 2002 WL 31662059 (Tex.App.-San Antonio Nov. 27, 2002, no pet. h.). Baribeau's motion for rehearing is denied. This court's prior opinion and judgment are withdrawn, and this opinion and judgment are substituted in their place.

Lynn Gustafson and her husband Richard brought claims of battery, fraud, negligence, and negligent misrepresentation against Baribeau.[1] The jury found Baribeau liable on all but the negligent misrepresentation causes of action and awarded actual damages of $127,288.93 and exemplary damages of $250,000. The trial court remitted the exemplary damages award to $200,000 under the cap of the Exemplary Damages Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b) (Vernon Supp.2002). The exemplary damages award was based on fraud. We affirm the judgment of the trial court.

---

1. Both Lynn and Richard Gustafson were named parties in the trial court. The jury did not award Richard damages, and he has not appealed that issue. Therefore, Richard Gustafson is not a party to this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Baribeau is an ophthalmologist who began performing Erbium laser skin resurfacing in May of 1997. On May 30, 1997, Lynn met with Baribeau, who suggested an eyelid tuck as well as Erbium laser procedure to even her facial pigment. Although both procedures were scheduled for June 10th, only the Erbium laser was performed. After Lynn was anaesthetized, Baribeau realized the consent form only referenced the Erbium laser and not the eyelid tuck. Baribeau termed this mistake a clerical error, but decided against performing the eyelid tuck that day.

Lynn followed up with Baribeau on June 17th. When shown her broken capillaries and oozing sores, Baribeau informed Lynn that she could expect a four-month healing period. At that appointment, Lynn signed a consent form for the eyelid tuck and for additional Erbium laser surgery on a small scar on her chin. Both procedures were scheduled for June 24th. According to Baribeau and Juanita Loya, the nurse present that day, Lynn requested a full-face Erbium laser treatment the morning of the procedure. Baribeau also testified that even though Lynn did not sign a consent form for the second full-face procedure, she verbally consented. Baribeau claims that her skin was sufficiently healed by June 24th when he decided to perform a second full-face procedure, and again described Lynn's lack of written consent as a clerical error.

Lynn denies that she requested the second full-face procedure and argues that she expected only the procedures to which she gave her written consent—the eyelid tuck and the limited Erbium laser on her chin. She testified that when she spoke with Baribeau the morning of the surgery, he stated that he would do the eyelid tuck but would not use the Erbium laser at all. According to Lynn, Baribeau said that he would treat the scar on her chin with steroid injections instead. She testified that at the June 17th appointment, Baribeau told her no further Erbium laser treatments could be performed until her face completely healed, a period he estimated at four months.

The second surgery caused scarring on Lynn's face equivalent to second and third-degree burns. In the ensuing trial, the jury found that Baribeau's negligence proximately caused Lynn's injury; Baribeau performed full-face resurfacing without Lynn's consent (medical battery); and Baribeau committed fraud against Lynn. The jury awarded $126,788.93 for damages caused by Baribeau's negligence and medical battery, and $500 for damages caused by Baribeau's fraud. The jury also determined there was clear and convincing evidence of fraud and awarded $250,000 in exemplary damages.[2]

Baribeau challenges the judgment of the trial court in fourteen issues. We will address his complaints as three distinct issues.

## SUBMISSION OF FRAUD QUESTIONS

Baribeau raises several challenges to the fraud questions.[3] First, he claims the evi-

---

2. The jury failed to find that Baribeau made negligent misrepresentations or that Lynn's husband suffered any damages.

3. Question four asked the jury the following: Did Dr. Alan D. Baribeau commit fraud against Lynn Gustafson?
INSTRUCTIONS:

Fraud occurs when
 a. a party makes a material misrepresentation,
 b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

dence was legally insufficient to permit submission of the fraud questions. Next, he contends there is legally and factually insufficient evidence to support the jury's answers to those questions. Finally, he claims that the trial court erred in instructing the jury on the fraud questions. We affirm the submission of both questions on fraud, determine that legally and factually sufficient evidence supports the jury's answers to both questions, and hold that the trial court did not err in instructing the jury on the fraud questions.

### Proper Submission of the Fraud Questions

■■■ Litigants are entitled to have controlling and disputed fact issues submitted to the jury. *See Bel–Ton Elec. Serv., Inc. v. Pickle,* 915 S.W.2d 480, 481 (Tex.1996). Controlling issues must be properly pleaded and supported by some evidence in order to be submitted to the jury. *See* Tex.R. Civ. P. 278; *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995). The propriety of submission of controlling issues in a case is a question of law subject to *de novo* review. *See Cont'l Cas. Co. v. Street,* 379 S.W.2d 648, 651 (Tex.1964).

■■■ Lynn's petition stated several fraud causes of action: one based on actual fraud from Baribeau's misrepresentation of the type of procedure he intended to perform;

another based on misrepresentation of his experience with the Erbium laser; a third on theories of constructive fraud; and finally a claim for breach of fiduciary duty. Lynn's attorney withdrew the breach of fiduciary duty claim during the charge conference, and does not challenge its omission on appeal. Therefore, we will only address this argument as it pertains to actual fraud and theories of constructive fraud.

■■■ The elements of common law fraudulent misrepresentation are:

(1) the defendant made a material representation to the plaintiff;

(2) the representation was false;

(3) the defendant knew of the representation's falsity when it was made;

(4) the defendant made the representation with the intent that the plaintiff act on it; and ·

(5) the plaintiff detrimentally relied on the defendant's misrepresentation.

*See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992). Lynn testified that before the second procedure, Baribeau told her he would not be using the Erbium laser at all. On the other hand, Baribeau testified that he intended to perform a full-face procedure the morning of June 24th. Evidence of materiality and reliance was established by Lynn's testimony that the first treatment

---

c. the misrepresentation is made with the intention that it should be acted on by the other party, and

d. the other party acts in the [sic] reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means

a. a false statement of fact; or

b. a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Fraud also occurs when

a. a party fails to disclose a material fact within the knowledge of that party,

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

c. the party intends to induce the other party to take some action by failing to disclose the fact.

Question nine, conditioned upon an affirmative answer to question four and a finding of damages for fraud, is identical to question four, except that it requires clear and convincing evidence to establish a finding of fraud.

left her skin in such bad condition that she would not have undergone the second surgery had she known that Baribeau intended to perform a second full-face procedure. This conflicting testimony is some evidence of fraud sufficient to raise a fact issue for the jury's consideration, and supports submission of the fraud questions both by a preponderance of the evidence and by clear and convincing evidence.

## Legal and Factual Sufficiency

■ Baribeau challenges the legal and factual sufficiency of the evidence to support the jury's finding of fraud. Lynn had the burden of proving fraud at trial, so Baribeau must demonstrate on appeal that there is no evidence to support the adverse finding. *See* TEX.R.APP. P. 38.1(e). In a no evidence point, the reviewing court considers only the evidence and inferences that tend to support the finding and disregards all evidence and inferences to the contrary. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). If more than a scintilla of evidence supports the finding, the no evidence challenge fails. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41 (Tex.1998).

■ In a factual sufficiency challenge, this court considers all the evidence supporting and contrary to the judgment. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). The court reverses only if the evidence supporting the jury's finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). Because Lynn had the burden of proof at trial, Baribeau must prove on appeal that the evidence supporting the jury's finding is clearly wrong. *See Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985).

The evidence set out above in support of the judgment should be considered in the sufficiency of the evidence analysis. In addition to testimony given by Baribeau and Lynn, Richard Gustafson testified that he understood his wife's surgery was to be limited to her eyelids and the small scar on her chin. Connie Palonco, a nurse who worked for Baribeau at the time of the surgery, testified that she was present during the conversations between Baribeau and Lynn. Palonco stated that the only other surgery Lynn mentioned was a possible mole removal. Baribeau and his nurse, Juanita Loya, contradicted these statements and testified that Lynn requested the second full-face procedure.

■ Evidence of fraud may be inferred from all the circumstances that "make up the transaction, disclose its true character, explain the acts of the parties, or throw light on their objections and intentions.... Fraud is deducible from artifice and concealment as well as from affirmative conduct of a character to deceive." *Campbell v. Booth,* 526 S.W.2d 167, 169 (Tex.Civ.App.-Dallas 1975, writ ref'd n.r.e.). Lynn presented evidence that Baribeau falsified records in an effort to conceal his earlier misrepresentations. To support this allegation, she pointed to the fact that the operative report from her first procedure was missing, including the "after" photos which would have shown the condition of Lynn's face one week before the second procedure.

Lynn also produced conflicting documents from her medical records. Baribeau gave Lynn medical records with no notations on them in September of 1997, less than four months after her procedures. Baribeau used what were supposedly the same medical records during the June 2001 trial. The records Baribeau relied upon at trial, however, included various notations that placed him on stronger legal

footing. For instance, the record from the June 17th appointment stated, "Mrs. Gustafson feels not enough laser was done and wants to discuss more being done along with having her lids done," and "she would like more laser Tx. done for better results." No such notation was made on that same document when it was produced to Lynn four months after her surgery. Additionally, the laser log for the second procedure shows that the limited Erbium laser to the chin was the only surgery to be performed. Six weeks later, however, Baribeau modified the document to reflect performance of the full-face procedure. This is sufficient evidence to support the jury's findings of fraud both by a preponderance of the evidence and by clear and convincing evidence.

## Submission of the Fraud Instructions

 The trial court possesses significantly more discretion in submitting instructions and definitions than it has in submitting questions. *See Allen v. Allen,* 966 S.W.2d 658, 659 (Tex.App.-San Antonio 1998, pet. denied). The objecting party "must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading is waived unless specifically included in the objections." TEX.R. CIV. P. 274. A trial court's submission of a theory by instruction rather than question is reviewed for an abuse of discretion. *See Tex. Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990).

 Baribeau argues that the broad-form fraud questions include two instructions on fraud, one of which is improper. However, his objection at the charge conference was simply that "(t)here is also no evidence to support the submission of Question Number four on fraud, and, fur-thermore, by submitting fraud and negligence, it amounts to a comment on the weight of the evidence by having these theories in there together." He made no other objections to question four and only made a no evidence objection to question nine on exemplary damages from fraud. These objections did not put the trial court on notice of Baribeau's complaint, so he cannot raise it for the first time on appeal. *See* TEX.R.APP. P. 33.1; *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 389 (Tex. 2000).

## RECASTING OF THE MEDICAL BATTERY CLAIM AS FRAUD

 Baribeau contends the two fraud issues submitted to the jury were merely a recasting of question two, the medical battery question. He contends the underlying facts supporting the battery and fraud claims are the same and that permitting recovery on both violates the one satisfaction rule. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991). We disagree.

 When a plaintiff pleads alternate theories of liability, judgment awarding damages on more than one theory may stand if the theories of liability arise from separate and distinct injuries and separate and distinct damage findings are entered on each theory of liability. *See Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex.1987).

 Under the Penal Code, the common law actions of assault and battery are addressed simply as assault. *See* TEX. PEN.CODE ANN. § 22.01(a) (Vernon Supp. 2002). The elements for assault are the same in civil and criminal cases. *See Wal-Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 523 (Tex.App.-San Antonio 1996, writ denied). Therefore, battery occurs when a person "intentionally, knowingly, or reck-

lessly causes bodily injury to another...." TEX. PEN.CODE ANN. § 22.01(a) (Vernon 2002). Battery in the health care context generally involves claims that a doctor performed acts on the patient without consent. *See Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 144 (Tex. App.-San Antonio 1991, writ denied). Recovery for battery is premised upon an injurious contact between the parties. *See ONI, Inc. v. Swift*, 990 S.W.2d 500, 503 (Tex.App.-Austin 1999, no pet.). Recovery on a fraud allegation is based on material misrepresentation and detrimental reliance. *See T.O. Stanley Boot*, 847 S.W.2d at 222.

In her recovery for negligence and battery, the jury awarded Lynn damages of $126,788.93 for past physical pain and mental anguish, medical expenses, disfigurement, and loss of earnings and earning capacity. The jury awarded $500 for past pecuniary loss from Baribeau's fraud. Lynn's battery injuries are that an unwanted touch of her body occurred. Her fraud injuries stem from her reliance on Baribeau's assurance that he would not use the Erbium laser during the second surgery. The injuries resulting from Lynn's reliance on Baribeau's misrepresentations are separate and distinct from her injuries arising from Baribeau's unauthorized bodily contact. *See Birchfield*, 747 S.W.2d at 367. We hold that Lynn's recovery for both fraud and battery does not violate the one satisfaction rule.

### EXEMPLARY DAMAGES AWARD

■ Baribeau raises several challenges to the award of exemplary damages. He claims the award is excessive, not supported by legally or factually sufficient evidence, and violates his due process rights under the Fourteenth Amendment. This court reviews the excessiveness of an exemplary damages award as a factual sufficiency challenge. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.1998). We turn first to the factual sufficiency issue, as it answers Baribeau's first three questions on exemplary damages. This court considers all the evidence supporting and contrary to the judgment and may reverse or suggest a remittitur only if the exemplary damages award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex.1994).

■ The Legislature created the Exemplary Damages Act to punish and deter wrongful conduct. *See Moriel*, 879 S.W.2d at 16. To recover exemplary damages when more than one cause of action is asserted, the party seeking exemplary damages must obtain at least one finding of an independent tort with accompanying actual damages. *See Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986). Two policy-based reasons support this prerequisite. First, the comparison indicates whether the jury's award was based on passion rather than reason. *See Wright v. Gifford–Hill & Co., Inc.*, 725 S.W.2d 712, 714 (Tex.1987). Second, the law will not punish even the most heinous conduct if that conduct does not cause an injury. *Id.* Although no set ratio exists to determine the appropriateness of an exemplary damages award, the Civil Practice and Remedies Code sets out factors to consider, including:

(1) the nature of the wrong;

(2) the character of the defendant's conduct;

(3) the degree of the defendant's culpability;

(4) the situation and sensibilities of the parties;

(5) the extent to which the conduct offends the public sense of justice and propriety; and

(6) the net worth of the defendant.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.011 (Vernon 1997); *see also Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

The nature of the wrong refers to the injury or harm caused by the defendant's actions. *See Apache Corp. v. Moore,* 960 S.W.2d 746, 748 (Tex.App.-Amarillo 1997, writ denied). Lynn's physician testified that her scars are the same as if someone put a cigar out on her face. The laser penetrated her skin at a level so deep that it killed the cells that create pigment. Her face, neck, and chest are peppered with white blotches where pigment can no longer be produced. As of the time of trial, she could not go outdoors in the daytime and wore corrective stage make-up. Her physician testified that several reconstructive surgeries would be required to correct the scars left on her face. Lynn was also emotionally scarred; Baribeau diagnosed her with depression and placed her on anti-depressant medication after the second surgery. The harm caused by Baribeau's actions is severe and permanent. We believe this factor supports the exemplary damages award.

Turning to the character of the defendant's conduct and the degree of the defendant's culpability, Lynn testified that Baribeau misrepresented the number of Erbium laser procedures he previously performed. This misrepresentation was especially harmful, as Lynn's treating physician testified, because one with experience in these procedures should know the length of time required for skin to heal between procedures. Baribeau himself testified that Lynn's skin had not sufficiently healed when he performed the second procedure. He also represented to Lynn that he would not perform any additional work with the Erbium laser during Lynn's second surgery. Baribeau's fraudulent misrepresentation about the extent of the procedure he intended to perform essentially prevented Lynn from making an informed choice about her medical treatment. Lynn testified that she would not have undergone the second procedure if she had been informed that Baribeau intended to perform a full face Erbium treatment. As a result of Baribeau's fraudulent misrepresentation, she was subjected to treatment to which she did not consent and which was performed negligently. The facts of this case present a "but for" causation of Lynn's damages: but for Baribeau's fraud, Lynn would not have undergone the additional procedure which the jury determined was negligently performed and which caused severe injuries. In short, Baribeau's fraudulent misrepresentations engendered Lynn's trust and placed her in the position where the negligence occurred. This conduct likewise supports the award of exemplary damages.

We also consider the situation and sensibilities of the parties in determining the excessiveness of an exemplary damages award. This factor is closely associated with the defendant's net worth, and weighs the profitability of the wrongful conduct and the size of the award necessary to punish and deter that conduct. *See Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). Here, the record is devoid of evidence of Baribeau's net worth or the amount he profited from performing Lynn's second Erbium procedure. However, as Baribeau freely admitted, altering medical records is never appropriate. Baribeau's own medical expert also testified that a breach of trust between doctor and patient affects more than that solitary relationship; it impacts the medical community at large.

To properly punish Baribeau's malfeasance and deter others from breaching the same trust, an exemplary damages award like this is not only appropriate, but also necessary.

After reviewing Baribeau's testimony, it is apparent that his conduct offends the public's sense of justice and propriety. First, Baribeau's misrepresentations deprived Lynn from making informed choices about her medical care, a most basic valued right in our society. Second, Baribeau admittedly altered Lynn's medical records after he had reason to know that Lynn would file suit. While on the stand, Baribeau testified that it is never appropriate to alter medical records, but then admitted to inserting language in Lynn's medical records that placed him on higher legal ground. Third, Baribeau testified that his computer system was sophisticated and records in it could not be altered after they were entered. When confronted with records from that computer system that were admittedly altered months after Lynn's surgeries, Baribeau's response was that the records had to be altered because his cosmetologist "was Mexican, some of her word sentences structure were not exactly the way English is." Although this evidence is offensive, in light of all the other evidence produced at trial, we do not believe it to have caused the jurors to cast their votes based on passion rather than reason.

■ The jury was properly instructed on the *Kraus* factors codified in the Exemplary Damages Act, and the record contains competent evidence to support the exemplary damages award. We hold that factually sufficient evidence supports the jury's award of exemplary damages. Evidence which is factually sufficient is also necessarily legally sufficient. *See British Am. Ins. Co. v. Howarton*, 877 S.W.2d 347, 352 (Tex.App.-Houston [1st Dist.] 1994,

writ dism'd by agr.). The exemplary damages award therefore survives both the legal and factual sufficiency challenges.

■ Finally, Baribeau challenges the exemplary damages award on the ground that it deprives him of due process under the Fourteenth Amendment to the United States Constitution. Even if an exemplary damages award is not excessive under governing state law, it may violate a party's substantive due process right to protection from "grossly excessive" damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Like criminal punishment, exemplary damages require appropriate procedural and substantive safeguards to minimize the risk of unjust punishment. *Moriel*, 879 S.W.2d at 30. In the civil arena, the Due Process Clause limits states' discretion in two ways: first, by requiring notice of the type of conduct which may subject a defendant to punishment; and second, by requiring notice of the severity of the penalty a state may impose for that conduct. *See id.* To determine whether an exemplary damages award violates due process, the Texas Supreme Court has adopted the guideposts set forth by the Supreme Court of the United States, including:

(1) the degree of reprehensibility of the defendant's misconduct;

(2) the disparity between actual and punitive damages; and

(3) a comparison of the punitive damages awarded and other civil or criminal penalties that could be imposed for similar misconduct.

*Malone*, 972 S.W.2d at 45.

■ The Texas Supreme Court views the reprehensibility of the defendant's conduct as the most important indicia of the reasonableness of the award, and we do not disagree. *See id.* at 46. In the instant

case, the record reflects that Baribeau not only deliberately misled Lynn, but he also attempted to conceal his misrepresentations. We view his practice of altering Lynn's medical records equally repugnant as his misrepresentations. The reprehensibility of Baribeau's actions supports the exemplary damages award.

 Turning to the second guidepost, we believe that the disparity between the exemplary damages and Lynn's harm or potential harm also supports the award. Baribeau asserts that the ratio between exemplary damages and actual damages awarded by the jury requires a reduction in the exemplary damages award. This argument is that the punishment should not fit the conduct, but instead should only fit the damages awarded. Instead, we believe that the penalty should fit the gravity of the misconduct, not simply the actual damages awarded by a jury.[4] To accept Baribeau's argument would pervert the purpose of the exemplary damages scheme. Exemplary damages do not make an individual whole, but rather punish and deter contemptible conduct. *See Malone,* 972 S.W.2d at 39–40. Baribeau's proposed rule would require this and other courts to reduce exemplary damage awards to the point where they might have no realistic possibility of deterring or punishing conduct the law deems outrageous. We believe this exemplary damages award is

necessary to effectuate the purposes of exemplary damages, and that reducing the amount will not punish or deter this egregious conduct.

Finally, we examine comparable civil penalties Baribeau could have faced. Here, Baribeau's actions may be grounds for discipline by the Board of Medical Examiners. *See* TEX. STATE BD. OF MED. EXAMIN'RS, *Board Rules,* 165.1(a); 165.1(d); 190.1(c); 190.1(d) (Sept. 19, 2002), *http://www.tsbme.state.tx.us /rules/rules/bdrules.htm* (last visited March 11, 2003). We believe a fine in the form of exemplary damages to be a less severe punishment than suspension or revocation of Baribeau's medical license. The exemplary damages award survives the third prong of the Due Process challenge. We hold that the award of exemplary damages in this case does not violate Baribeau's due process rights. Accordingly, Baribeau's final issue is overruled.

The judgment of the trial court is affirmed.

---

4. The Supreme Court of the United States, in *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366, expounded on the problem exemplary damages present when a small amount of actual damages are awarded. "For instance, a man wildly fires a gun into a crowd. By sheer chance, no one is injured and the only damage is to a $10 pair of glasses. A jury could reasonably find only $10 in compensatory damages, but thousands of dollars in punitive damages to teach a duty of care. We would allow a jury to impose substantial punitive damages in order to deter future bad acts."

*TXO,* 509 U.S. at 459–60, 113 S.Ct. 2711. This case likewise presents an instance of low damages and high culpability. We believe the exemplary damages assessed against Baribeau are necessary to teach a duty of care and deter future bad acts. For that reason, we believe that the $200,000 in exemplary damages is proportional to the $500 in damages the jury attributed to Baribeau's fraud. We believe that effectuating the purposes of exemplary damages is of paramount importance and eclipses any concern about reducing the ratio between exemplary and actual damages.