Opinion issued March 20, 2008










     



In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00571-CV




JOSEPH RAY TAYLOR, Appellant

v.

KEVIN TAYLOR AND CHERYL TAYLOR, Appellees




On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 05FD3130




O P I N I O N 

          In this suit affecting the parent-child relationship (“SAPCR”), Kevin and
Cheryl Taylor petitioned the trial court requesting to be appointed the managing
conservators of their three minor grandchildren, M.N.T., S.R.T., and C.N.T., in
preference to the children’s parents. Joseph Ray Taylor, the father of the children and
son of Kevin and Cheryl, opposed the appointment. The case was tried to a jury. 
Because he had not tendered his exhibits and witness list at the pretrial conference,
Joseph was not allowed to present any evidence at trial, other than his own testimony. 
The jury selected Kevin and Cheryl to be the primary joint managing conservators of
the three children and chose Joseph and the children’s mother, Mary Blank Taylor,
to be managing conservators.


 The trial court rendered judgment in conformity with
the jury’s verdict. 
          Of the eight issues presented by Joseph, we address the following two issues,
which are necessary for the final disposition of the appeal: (1) whether the trial court
abused its discretion when it sanctioned Joseph by prohibiting him from presenting
non-party witnesses and exhibits at trial and (2) whether the record contains legally
sufficient evidence to support an implied finding by the jury that appointment of
Joseph as managing conservator “in preference” to Kevin and Cheryl was not in the
children’s best interest.
          We reverse and remand.
 
Sanctions
          In his seventh issue, Joseph contends that the trial court abused its discretion 
when it ordered that Joseph could not present evidence at trial, either through exhibits
or non-party witnesses, because he had not tendered his exhibits or witness list at the
pretrial conference. 
A.      Background Pertinent to Sanctions
          Kevin and Cheryl filed their original SAPCR petition in December 2005. On
August 29, 2006, the trial court signed a docket control order for a non-jury trial,
which set the pretrial conference for October 27, 2006 and trial for October 30, 2006. 
On October 10, 2006, the trial court signed an amended docket control order for a
jury trial. The dates for the pretrial conference and trial remained unchanged from
the previous docket control order. 
          On October 19, 2006, Kevin and Cheryl filed a motion for continuance,
requesting a continuance of the October 30 trial setting. Although no order on the
motion appears in the record, trial did not occur on October 30, 2006. 
          On the bottom of the amended docket control order were handwritten notations
specifying alternate dates for the pretrial conference and for trial. For the first
alternate setting, the trial court designated February 9, 2007 for the pretrial
conference and February 12, 2007 for trial. 
          The record also reflects, and it is not disputed, that the trial court signed an
ordering permitting Joseph’s attorney to withdraw on January 3, 2007. 
          On Friday, February 9, 2007, the case was called for pretrial conference. Also
on that date, Joseph filed a pro se motion for continuance. In the motion, Joseph
explained that he had retained a new attorney, who was unable to attend the pretrial
conference. Joseph requested a continuance “to allow my attorney sufficient time to
be brought up to speed on the key components of this case.” 
          Joseph also appeared pro se at the pretrial conference. He explained to the trial
court that he had retained an attorney the day before and, for that reason, had filed a
motion for continuance. The trial court denied the motion stating, “You all are set
now. And you all are my number one case so you all are going on Monday.”
          Also at the pretrial conference, Kevin and Cheryl, through their counsel,
tendered their trial exhibits and witness and exhibit lists to the trial court and to
Joseph. The trial court asked Joseph if he had exhibits. Joseph responded that he did
not “at that time.” The trial court informed Joseph that, if he did not tender his
exhibits that day, he would not be allowed to present exhibits at trial. Joseph
acknowledged that he understood the court’s ruling. 
          The trial court then asked Joseph if he had a witness list. Joseph responded
that the list was not available at that time because he had given “everything” he had
to his new attorney. Joseph requested a recess to contact his new attorney, who
Joseph explained was “on another case.” The trial court allowed Joseph five minutes
to reach his attorney. The court also admonished Joseph, “You have known about
this setting for a long time.” Joseph explained, “I’ve known about this setting, yes
ma’am, I do agree. But my lawyer did not drop out of this case until January 1st, and
it’s very difficult to come up with the amount of money that the lawyers request on
a particular case.” The trial court then told Joseph, “I understand. But if you don’t
have a witness list, then I’m not going to allow you to call any witnesses other than
parties.” Trial was scheduled to start on Monday, February 12, 2007.
          On Monday morning, Joseph’s new counsel appeared with Joseph in court. 
Before trial commenced, the trial court addressed additional pretrial matters. The trial
court asked if, after reviewing Kevin and Cheryl’s exhibits, an agreement could be
reached regarding the admissibility of the exhibits. Joseph’s attorney then informed
the trial court that she had a motion in limine to present. The trial court responded, 
“I’m not going to entertain a motion in limine at this time because all pretrial motions
were to have been heard Friday at pretrial.” 
          Joseph’s counsel then objected and explained to the trial court that Joseph had
retained her only late Thursday and that she had to be in court regarding another case
on Friday. The trial court responded, “Yes, ma’am. I can appreciate that.” Joseph’s
counsel continued, “I assumed there had been previous continuances that were not at
all the fault of my client. It’s only fair not to exclude the bias [sic], the inclusion of
evidence against him.” The trial court then stated, 
Ma’am, my pretrial for this case was Friday at 10:00. And your client
was present and presented a motion for continuance which was denied. 
So at this point in time—and he was told that he would not be able to
present witnesses other than parties nor any documentary evidence
because none was tendered and there were no motions in limine
presented at that point in time.
Joseph’s counsel answered, “Yes, your Honor. But my client is not an attorney. I
would like to object on the record on the basis of basic fairness.” 
          At one point in the discussion, the trial court remarked that Joseph had agreed
to allow his other attorney to withdraw. Joseph’s counsel explained that Joseph had
agreed to the withdrawal because he could not afford to pay the attorney. She told
the trial court that Joseph and her husband worked together. 
          During the hearing, Joseph’s attorney also offered Joseph’s trial exhibits and
a witness list. The trial court again ruled that, because he had not tendered those
items at the pretrial conference, he would not be allowed to present non-party
witnesses or exhibits at trial. 
          Trial proceeded, and Joseph presented no witnesses, other than his own
testimony, or tangible evidence. While cross-examining a witness, Joseph requested
to offer a CPS report for rebuttal purposes. The CPS report was listed on Kevin and
Cheryl’s exhibit list, but not introduced by them at trial. The trial court denied
Joseph’s request to use the report on the basis that he had not timely tendered his
exhibits at the pretrial conference.
          Post-trial, Joseph filed a motion for new trial. In the motion, Joseph objected
to the sufficiency of the evidence to support the jury’s verdict. He also complained
of the trial court’s ruling that he could not present witnesses or exhibits at trial,
asserting the ruling was “manifestly unjust.”


 
B.      Analysis
          Rule of Civil Procedure 166 permits a trial court to direct parties to appear
before it at a pretrial conference to consider, inter alia, the exchange of witness lists
and the marking and exchange of exhibits. See Tex. R. Civ. P. 166. Rule 166
functions “to assist in the disposition of the case without undue expense or burden to
the parties.” Id. The rule also permits a trial court “to make an order that recites the
action taken at the pretrial conference;” that is, the rule permits the trial court to sign
pretrial orders. See id. As we have previously noted, one of the purposes of the
pretrial order is to aid in the orderly disposition of cases. British American Ins. Co.
v. Howarton, 877 S.W.2d 347, 351 (Tex. App.—Houston [1st Dist.] 1994, writ
dism’d by agr.). 
          Although Rule 166 does not expressly authorize the trial court to impose
sanctions for violations of a pretrial order, the Texas Supreme Court has determined
that such power is implicit in Rule 166. Koslow’s v. Mackie, 796 S.W.2d 700,
703–04 (Tex. 1990). Nonetheless, the sanctions imposed must be just and
appropriate. In re Bledsoe, 41 S.W.3d 807, 812 (Tex. App.—Fort Worth 2001, orig.
proceeding). 
          We review the trial court’s imposition of sanctions in this case under an abuse
of discretion standard. Koslow’s, 796 S.W.2d at 704. The test for abuse of discretion
is whether the trial court acted without reference to any guiding rules and principles,
or equivalently, whether under all the circumstances of the particular case the trial
court’s action was arbitrary or unreasonable. Id. In conducting our analysis, we
recognize that the trial court’s discretion in imposing sanctions is limited by the
standards set out in TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913
(Tex. 1991). See Wal-Mart Stores, Inc. v. Butler, 41 S.W.3d 816, 817-19 (Tex.
App.—Dallas 2001, no pet.) (concluding that TransAmerican standard applies to
sanctions imposed for violating pretrial order); see also Bledsoe, 41 S.W.3d at 812
(applying TransAmerican standard to sanctions imposed for violating pretrial order). 
          In TransAmerican, the supreme court developed a two-part test for courts to
apply when determining whether a sanction is “just.” 811 S.W.2d at 917. First, there
must be a direct nexus among the offensive conduct, the offender, and the sanction
imposed. Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003) (citing
TransAmerican, 811 S.W.2d at 917). A just sanction must be directed against the
abuse and toward remedying the prejudice caused to the innocent party, and the
sanction should be visited upon the offender. Id. 
          Second, just sanctions must not be excessive. TransAmerican, 811 S.W.2d at
917. That is, a sanction imposed should be no more severe than necessary to satisfy
its legitimate purposes, which include securing compliance with discovery rules,
deterring other litigants from similar misconduct, and punishing violators. Id. For
this reason, the supreme court requires courts to consider less stringent sanctions and
whether such lesser sanctions would fully promote compliance. Id.
          We first discuss whether the sanctions imposed were directly related to the
abusive conduct. Joseph does not dispute that he was aware of the pretrial deadlines. 
But, it appears that Joseph, and his new counsel, believed that the trial court would
grant a continuance to allow his newly retained counsel to meet the pretrial
requirements, given the circumstances. It is undisputed that Joseph was without
counsel for a month preceding the pretrial conference and had only retained new
counsel the evening before the hearing. The trial court was aware that Joseph’s new
counsel was in court on another matter at the time of the pretrial conference. While
Joseph had apparently agreed to his first counsel’s withdrawal, the trial court was
made aware that Joseph was financially unable to retain new counsel before he did
and that his present counsel is the wife of Joseph’s coworker. Thus, nothing in the
record indicates that Joseph’s lack of representation was due to any lack of diligence
or fault on his behalf or that he did not make every effort to secure new counsel. 
          Sanctions fail under the first TransAmerican prong if the party seeking the
sanctions could show no prejudice related to the conduct of the offending party.


 
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992). Here, it is not
apparent that Kevin and Cheryl were prejudiced by Joseph’s failure to present his
witness list and exhibits at the pretrial hearing on Friday. The record from the
Monday morning hearing indicates that Joseph sought to have only one witness
testify at trial. The record also indicates that Kevin and Cheryl’s counsel was already
aware of the identity of that witness. We further note that CPS report Joseph sought
to introduce for rebuttal purposes was an exhibit already listed on Kevin and Cheryl’s
exhibit list. Thus, prejudice to Kevin and Cheryl is not evident on this record. See
Bledsoe, 41 S.W.3d at 814. 
          We next consider whether the sanctions were excessive. Nothing in the record
indicates that the trial court considered lesser sanctions or that lesser sanctions would
not have been effective. See id. The record also does not show that Joseph was
warned, prior to the pretrial conference, that his failure to tender his exhibits and
witness list at the pretrial conference would preclude him from presenting any
testimonial or documentary evidence at trial. With respect to the pretrial conference,
the amended docket control order provided, in relevant part,
Trial counsel are ORDERED to attend and to be prepared to discuss all
aspects of the suit and trial. . . . Exhibits shall be pre-marked (whether
you think that you are going to use it or not), discussed and stipulations
made with a list for the Court. You will be required to show cause why
any of the terms of this order are not timely completed. Failure to obey
this order may result in fines and/or sanctions.
          The order’s vague allusion to sanctions did not place Joseph on notice that he
risked being unable to present a defense at trial if he failed to meet the pretrial
deadlines. Moreover, the order makes no express mention of tendering a witness list
at the pretrial conference. 
          The record also does not reflect any past actions by Joseph that would justify
the imposition of such harsh sanctions. The record does not indicate that Joseph or
his counsel had, at any point, engaged in any type of bad faith conduct, disregarded
the rules of procedure, or caused a delay in the trial setting. Nor is there any showing
that Joseph had abused the discovery process or otherwise failed to comply with the
trial court’s orders prior to the pretrial conference. 
          In addition, the sanctions imposed in this case are difficult to reconcile with the
legislative mandate that “the best interest of the child shall always be the primary
consideration of the court in determining the issues of conservatorship and possession
of and access to the child.” Tex. Fam. Code Ann. § 153.002 (Vernon 2002). Texas
courts have recognized that regard for the best interest of the child properly may be
a factor influencing a trial court’s ruling on procedural issues such as discovery
sanctions. See In re P.M.B., 2 S.W.3d 618, 624 (Tex. App.—Houston [14th Dist.]
1999, no pet.) (reversing trial court’s exclusion of evidence as discovery sanction
under former Rule of Civil Procedure 215(5) in conservatorship case); see also In re
C.H., No. 07-04-0428-CV, 2006 WL 3813751, at *2 (Tex. App.—Amarillo Dec. 28,
2006, no pet.) (mem. op.) (affirming, in conservatorship case, trial court’s ruling
allowing late-disclosed witness to testify based on best interest of child).
          We agree with the Fourteenth Court of Appeals that “the best interest of a child
can only be attained when a court’s decision is as well-informed as the circumstances
allow.” P.M.B., 2 S.W.3d at 624–25; In re N.R.C., 94 S.W.3d 799, 810 (Tex.
App.—Houston [14 Dist.] 2002, pet. denied) (noting, “[T]o silence witnesses whose
testimony is probative of the child’s best interest is to do a disservice to the child.”). 
We also agree with the following reasoning, 
A decision on custody, possession, or access can rarely be well-informed
without consideration of the evidence and perspectives of both [parties]. 
Because the exclusion of any important evidence as a discovery sanction
can only produce a less-informed decision, contrary to the best interest
of the child, we believe that it should be resorted to only where lesser
sanctions are either impracticable or have been attempted and proven
unsuccessful.
P.M.B., 2 S.W.3d at 625.
          Here, the jury’s conservatorship decision could not have been well-informed,
and thus in the best interest of the children, without the jury first considering Joseph’s
evidence. We conclude that the trial court’s sanction imposed in this case was
excessive. Accordingly, we hold that the trial court abused its discretion by
prohibiting Joseph from presenting non-party witnesses and tangible evidence at trial. 
          We may reverse only if the trial court’s sanctions probably caused rendition of
an improper judgment or probably prevented the appellant from properly presenting
the case to this court. See Tex. R. App. P. 44.1(a). Here, the harm caused by Joseph’s
inability to present any evidence in defense of the SAPCR suit is patent. We agree
with other courts that precluding a party from calling any fact witnesses and offering
any tangible evidence is tantamount to a death penalty sanction. See N.R.C., 94
S.W.3d at 810 (concluding that striking of all of mother’s fact witnesses was death
penalty sanction); P.M.B., 2 S.W.3d at 624 (noting that exclusion of evidence is
extreme penalty akin to striking of pleadings). By precluding Joseph from presenting
any evidence at trial, other than his own testimony, the trial court eviscerated
Joseph’s ability to present effectively the merits of his defense. See N.R.C., 94
S.W.3d at 810. 
          Moreover, though Joseph’s counsel explained to the jury why he was not
allowed to call any witnesses or present evidence, the jury likely drew negative
inferences from Joseph’s failure to either comply with the trial court’s pretrial order
or present evidence. See id. It is reasonable to assume that, without fact or expert
witnesses to corroborate his own testimony, Joseph suffered prejudice in the eyes of
jury. See id. 
          For these reasons, we hold that, on the record presented, the sanction imposed
in this case probably caused the rendition of an improper judgment, which requires
reversal. See Tex. R. App. P. 44.1(a).
          We sustain Joseph’s seventh issue.
Legal Sufficiency of the Evidence
          In his fourth issue, Joseph contends that the Kevin and Cheryl did not present
legally sufficient evidence to show that he had engaged in behavior or conduct “to
support a finding that he would significantly impair the health or welfare of his
children.”


 The charge in this case instructed the jury, in relevant part, that Joseph
should be appointed the children’s managing conservator “in preference to [Kevin
and Cheryl], unless appointment of [Joseph] would not be in the best interest of [the
three children] because appointment would significantly impair [the children’s]
physical or emotional development.”


 (Emphasis added.) We review Joseph’s legal
sufficiency challenge according to the charge as given. See Minnesota Life Ins. Co.
v. Vasquez, 192 S.W.3d 774, 778 (Tex. 2006).
          In deciding a legal-sufficiency challenge, we determine whether there is
evidence that would enable reasonable and fair-minded people to reach the verdict
under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). To make
this determination, we (1) credit all favorable evidence that reasonable jurors could
believe; (2) disregard all contrary evidence, except that which they could not ignore;
(3) view the evidence in the light most favorable to the verdict; and (4) indulge every
reasonable inference that would support the verdict. Id. But, if the evidence allows
only one inference, we may not disregard it. Id.
          Family Code section 153.131(a) provides for the appointment of the parent as
sole managing conservator or the parents as joint managing conservators, unless the
court finds the appointment would not be in the best interest of the child because it
would significantly impair the child’s physical health or emotional development. 
Tex. Fam. Code Ann. § 153.131(a) (Vernon 2002). For the court to award managing
conservatorship to a non-parent under section 153.131, the non-parent must prove by
a preponderance of credible evidence that appointing the parent as a managing
conservator would result in serious physical or emotional harm to the child. 
Whitworth v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007,
no pet.). Evidence must be presented to support the logical inference that some
specific, identifiable behavior or conduct of the parent will probably cause that harm. 
Id. This link between the parent’s conduct and harm to the child may not be based
on evidence that merely raises a surmise or speculation of possible harm. Id. When
a non-parent and a parent are both seeking managing conservatorship, “close calls”
go to the parent. Id.
          An adult’s future conduct may be somewhat determined by recent past conduct. 
In and of itself, however, evidence of past misconduct may not be sufficient to show
present unfitness. Id. Further, it is wholly inadequate simply to present evidence that
a non-parent would be a better choice as custodian of the child. Id. (citing Lewelling
v. Lewelling, 796 S.W.2d 164, 167 (Tex. 1990)). The non-parent must offer evidence
of specific acts or omissions of the parent that demonstrate an award of custody to the
parent would result in physical or emotional harm to the child. Id. Specific acts or
omissions of a parent implicating a significant impairment to a child’s emotional
development may be inferred from direct evidence. Id.
          In this case, evidence was presented at trial showing the following:
          •        Joseph and the children’s mother, Mary, had a tumultuous marriage. 
Throughout the marriage the couple would separate, reconcile, and then
separate again. 
 
          •        Mary testified that she and Joseph engaged in physical violence with
one another, including fist fights. Mary also testified Joseph tried to run
her over with a truck with the children inside the vehicle.
 
          •        Because of the marital problems between Joseph and Mary, and due to
Joseph’s long work hours, the three children were raised primarily by
their grandparents. The oldest child, M.N.T., had resided the majority
of her seven years with Kevin and Cheryl, while the two younger
children, six-year-old S.R.T. and four-year-old C.N.T., had lived most
of their lives with their maternal grandparents.
 
          •        When Kevin and Cheryl told Joseph that they believed M.N.T. had been
sexually abused because M.N.T was engaging in sexually inappropriate
behavior, Joseph refused to seek help to determine whether M.N.T. had
been sexually assaulted. Instead, Joseph was more concerned about
“clearing his name” with respect to allegations that he had sexually
abused M.N.T.
 
          •        Joseph made a comment to Kevin to the effect that he could not lay next
to M.N.T. without ejaculating.
 
          •        Mary’s sister, who babysat the children, testified that, when he came
home from work, Joseph would send the children upstairs to play, while
he watched television. While sending his own children upstairs to play,
Joseph would spend time with his girlfriend’s children and allowed them
to watch television with him. Mary’s sister believed that these and other
actions of Joseph indicated that he favored his girlfriend’s children over
his own.
          •        Joseph had threatened that, if he gained custody of the children, the
children’s grandparents would never see the children again.
 
          Applying the appropriate standard, we hold that the evidence is legally
sufficient evidence to support an implied finding that appointment of Joseph would
significantly impair the children’s physical or emotional development.
 
Conclusion
          We reverse the judgment of the trial court and remand for further proceedings.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.