**In re Chad L. BLEDSOE, Relator.**

**No. 2–00–419–CV.**

Court of Appeals of Texas,
Fort Worth.

March 14, 2001.

William K. Clary, Bridgeport, for Relator.

Lively & Padfield, L.L.P. and John R. Lively and Mark W. Stout, Fort Worth, for Real Parties in Interest.

PANEL B: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

### Introduction

Relator Chad L. Bledsoe seeks mandamus relief from the probate court's oral order striking his motion in limine, trial exhibit list, fact witness list, trial summary, and proposed jury instructions, definitions, and questions because of his failure to comply with the court's docket control order. Bledsoe contends the probate court abused its discretion in striking his pretrial pleadings because: the order constitutes improper death penalty sanctions; he was denied due process of law in that he was never notified that his

failure to comply with the order could result in the sanctions imposed; and the sanctions imposed were not "just" given the circumstances and the conduct of the real parties in interest. We conditionally grant in part, and deny in part, Bledsoe's petition for writ of mandamus.

### Procedural and Factual Background

The underlying case involves a dispute over the estate of Lynda B. Wharton. Real parties in interest, the independent administrator of the estate and the decedent's brothers and sisters, brought suit in Probate Court No. 1, Tarrant County, Texas against Bledsoe, the decedent's nephew. They contend that Bledsoe, while acting as the decedent's attorney-in-fact, wrongfully transferred to himself several tracts of real property located in Tarrant and Johnson Counties and took control of various personal assets belonging to the decedent. They allege claims for breach of fiduciary duty, conversion, equitable accounting, theft, recission, tortious interference with inheritance rights, promissory estoppel, constructive trust, fraud, tortious interference with the administration of an estate, and for declaratory relief. Bledsoe answered by general denial and asserted six affirmative defenses: confession and avoidance-gift, estoppel, waiver, ratification, release, and laches.

The case has been ongoing for three years. Throughout this time, there has been much activity on both sides of the case. Depositions have been taken. Discovery has been conducted and completed. Various motions have been filed and considered, including at least two motions for summary judgment. In January 2000, both sides amended their pleadings. Trial was subsequently continued.

Thereafter, on May 3, 2000, the probate court entered its second docket control order and level III discovery control plan, which set certain pretrial deadlines, a pretrial hearing for August 11, and a trial date of September 5. The court's order did not set forth any specific time for the pretrial hearing. The order required the parties to prepare and present to the court, at or before the August 11 pretrial hearing, their trial summaries, fact and expert witness lists, documentary evidence and exhibits, and their requested jury issues and instructions. Any pretrial motions, such as motions in limine and motions for summary judgment, were to be filed by August 1.

Following entry of the docket control order, Bledsoe's counsel was allowed to withdraw on June 29. Bledsoe eventually obtained new counsel, but not until after the August deadlines set forth in the order. Bledsoe's current counsel filed a notice of appearance on August 24.

The pretrial hearing apparently took place on August 11, attended only by counsel for the real parties in interest. Bledsoe failed to attend the hearing or to file any of his pretrial pleadings before the deadlines set forth in the court's docket control order.

Trial was subsequently reset to October 24, but the probate court ruled that the pretrial deadlines would remain unchanged.

Real parties in interest did not serve Bledsoe with their pretrial pleadings until September 27. Thereafter, Bledsoe filed his motion in limine, trial exhibit list, fact witness list, trial summary, and proposed jury instructions, definitions, and questions on October 13. Real parties in interest moved to strike Bledsoe's pretrial pleadings, claiming they were untimely under the probate court's docket control order. Bledsoe responded and also filed a motion to strike the pretrial pleadings served on him by the real parties in interest. Fol-

lowing an October 20 hearing, the probate court orally granted the motion filed by the real parties in interest, denied Bledsoe's motion, and struck Bledsoe's pretrial pleadings. The probate court never signed a written order.[1]

Trial was again reset for January 17, 2001. On January 14, 2001, we stayed the January 17 trial setting pending the disposition of this original proceeding.

### Probate Court's Oral Order

Before we can address the merits of Bledsoe's complaints, we must first determine whether mandamus relief is available when there is no written order. Some courts have indicated that a petition for writ of mandamus could be overruled on this basis alone. *See Woods v. Alvarez,* 925 S.W.2d 119, 121 (Tex.App.—Corpus Christi), *overruled on other grounds, Bridgestone/Firestone, Inc. v. Thirteenth Court of Appeals,* 929 S.W.2d 440 (Tex. 1996) (orig. proceeding); *Frink v. Blackstock,* 813 S.W.2d 602, 603–04 (Tex.App.— Houston [1st Dist.] 1991, orig. proceeding). Other courts, however, including the Texas Supreme Court, have addressed the merits of a mandamus action that challenges an oral order. *See Davenport v. Garcia,* 837 S.W.2d 73, 73 (Tex.1992) (order, orig. proceeding); *In re Perritt,* 973 S.W.2d 776, 779–80 (Tex.App.—Texarkana 1998), *overruled on other grounds,* 992 S.W.2d 444 (Tex.1999) (orig. proceeding); *State ex rel. Skeen v. Tunnell,* 768 S.W.2d 765, 766 n. 1 (Tex.App.—Tyler 1989, orig. proceeding).

■ The most recent case addressing this issue notes the differences between former rule 121(a)(2)(C) of the Texas Rules of Appellate Procedure and current

rule 52.3(j)(1)(A). *See In re Perritt,* 973 S.W.2d at 779–80. Former rule 121(a)(2)(C) expressly required a "certified or sworn copy of the order complained of," indicating that a written order was necessary, while current rule 52.3(j)(1)(A) requires "a certified or sworn copy of any order complained of, *or any other document showing the matter complained of,*" indicating that a written order is not necessary. Tex.R.App.P. 52.3(j)(1)(A); Tex. R.App.P. 121(a)(2)(C) (Vernon Pamph. 1997, revised 1997) (emphasis added). While we do not encourage parties to file mandamus actions based upon a court's oral pronouncements, we conclude that rule 52.3(j)(1)(A) allows consideration of an oral order if the court's ruling is a clear, specific, and enforceable order that is adequately shown by the record. *Cf. S & A Rest. Corp. v. Leal,* 892 S.W.2d 855, 858 (Tex.1995) and *James v. Hubbard,* 21 S.W.3d 558, 562 (Tex.App.—San Antonio 2000, no pet.) (both stating that rendition of judgment is a present act, which decides the issues upon which ruling is made, and that words used by the trial court must clearly indicate present intent, as opposed to future intent, to render judgment at the time the words are expressed); *but cf.* Tex.R.App.P. 21.8(b) (requiring that granting of motion for new trial must be accomplished by written order).

■ In this case, we have been provided with a complete copy of the reporter's record of the October 20 hearing. At the conclusion of the hearing, the probate court stated:

> Based on the testimony—or based on the arguments of counsel and the review of the pleadings, the Court is going to

---

**1.** On October 23, Bledsoe filed a suggestion of bankruptcy, which stayed all proceedings. Once the stay was lifted with respect to the underlying case, Bledsoe filed his petition for writ of mandamus with this court. He has informed this court that, although provided with a proposed order, the probate court has never entered a written order reflecting its October 20 ruling.

grant Plaintiff's motion to strike. The Court is going to overrule the Defendant's countermotion to strike.

These rulings do not, in the Court's opinion, do not represent sanctions in that rebuttal evidence is not excluded, and to the extent that the burden shifts, there is nothing to prevent the Court from properly submitting issues, which are required under the pattern jury charges now, under the fiduciary breach test. In my opinion, it will not prevent this defendant from having his day in Court. You have already stated ... that the witnesses and exhibits are going to be virtually the same. And to the extent they are not, rebuttal evidence is not excluded under this ruling.

Here, the probate court made its rulings and further indicated its perceived impact of "these rulings," stating that Bledsoe was not prevented from presenting rebuttal evidence under "this ruling." The probate court's oral ruling indicates a clear and present intent to render a decision to strike Bledsoe's pretrial pleadings. Based on this record, the oral order is properly subject to mandamus review. We, therefore, turn to the merits of Bledsoe's petition.

**Mandamus Relief From Sanctions**

█ A writ of mandamus will lie only if the trial court abuses its discretion and there is no adequate remedy by appeal. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when, under all the circumstances of the particular case, the trial court's acts are arbitrary or unreasonable. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990).

█ Rule 166 of the Texas Rules of Civil Procedure permits trial courts to hold pretrial conferences and to enter orders establishing the agreements of the parties as to any of the matters considered, which control the subsequent course of the case up to trial. Tex.R.Civ.P. 166. The trial court has power, implicit under rule 166, to sanction a party for failing to obey its pretrial orders. *Koslow's*, 796 S.W.2d at 703–04 & n. 1.

█ However, the sanctions imposed pursuant to the court's inherent power must be just and appropriate. *Williams v. Akzo Nobel Chems., Inc.*, 999 S.W.2d 836, 843 (Tex.App.—Tyler 1999, no pet.) A trial court abuses its discretion if the sanctions imposed are not just. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991) (orig. proceeding). To determine whether sanctions are just, we apply the standards set forth in *TransAmerican*. *Williams*, 999 S.W.2d at 843. First, there must be a direct relationship between the offensive conduct and the sanction imposed. *TransAmerican*, 811 S.W.2d at 917. This requires that the sanction be directed against the abuse and toward remedying the prejudice caused the innocent party. *Id.* This prong is not met when the party seeking sanctions can show no prejudice due to the offending party's conduct. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992) (orig. proceeding). Second, the sanction imposed must not be excessive. This prong requires trial courts to consider whether the imposition of lesser sanctions would promote compliance with the rules. *Id.*

█ Death penalty sanctions should not be assessed absent a party's flagrant bad faith conduct or counsel's callous disregard of the rules. *TransAmerican*, 811 S.W.2d at 918. A death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the case on the merits. *Chrysler Corp.*, 841 S.W.2d at

845. Any sanction that is "case determinative" may constitute a death penalty sanction. *GTE Comm. Sys. Corp. v. Tanner,* 856 S.W.2d 725, 732 (Tex.1993) (orig. proceeding). Death penalty sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless the party's conduct justifies a presumption that its claims or defenses lack merit. *TransAmerican,* 811 S.W.2d at 918. Only in exceptional situations may case-determinative sanctions be imposed in the first instance—when they are clearly justified and no lesser sanctions will promote compliance. *Tanner,* 856 S.W.2d at 729. In cases where death penalty sanctions are imposed and the sanctions order is not immediately appealable, the party complaining of the sanctions order has no adequate remedy by appeal and may seek relief by petition for writ of mandamus. *TransAmerican,* 811 S.W.2d at 919–20.

### Death Penalty Sanctions

■ Bledsoe raised six affirmative defenses. The probate court's order operates to exclude his fact witnesses and any exhibits he may have offered at trial. It also prevents him from submitting any jury issues and instructions on his affirmative defenses.

■ Real parties in interest contend the order does not constitute death penalty sanctions because Bledsoe will still be allowed to put on rebuttal evidence and because the court indicated it could submit certain issues required under the pattern jury charge. Rebuttal evidence is limited, however, and goes only to disprove facts already in evidence by an adverse party. *Valley Indus., Inc. v. Cook,* 767 S.W.2d 458, 462 (Tex.App.—Dallas 1988, writ denied). Bledsoe has the burden of presenting evidence and obtaining jury findings to support each of his affirmative defenses. *Tex. Beef Cattle Co. v. Green,* 921 S.W.2d

203, 212 (Tex.1996). Absent evidence warranting submission of an issue to the jury, the issue cannot be submitted. *Arlington Mem'l Hosp. Found., Inc. v. Baird,* 991 S.W.2d 918, 921–23 (Tex.App.—Fort Worth 1999, pet. denied). The exclusion of Bledsoe's fact witnesses, exhibits, and proposed jury instructions, definitions, and questions will prevent him from presenting the merits of his affirmative defenses at trial, is tantamount to striking his pleadings, and is case determinative on these issues. Accordingly, as to the striking of these pleadings, the probate court's order constitutes death penalty sanctions.

### Direct Relationship Between Offensive Conduct and Sanctions Imposed

■ In determining whether the probate court abused its discretion in imposing death penalty sanctions, we first consider whether there is a direct relationship between the offensive conduct and the sanctions imposed.

It is clear Bledsoe knew of the pretrial hearing and the deadlines for filing his pretrial pleadings. However, it is equally clear that he was without counsel at that time, and had been without counsel for more than a month before the hearing and pleading deadlines. While the parties agree that the probate court admonished Bledsoe, at the time his former counsel withdrew, to retain new counsel because of the impending deadlines, the court never inquired into what attempts Bledsoe had made to secure counsel. The court made no attempt to determine whether his failure to retain counsel was due to any lack of diligence or fault on his part or the result of some other circumstances.

Additionally, real parties in interest made no showing of prejudice or that they were unable to prepare for trial without Bledsoe's pretrial pleadings. The record shows that, more than seven months be-

fore the pretrial hearing, Bledsoe had properly pleaded his affirmative defenses and designated, in his discovery responses, all but one of his witnesses. This single witness not previously designated by Bledsoe, however, had already been designated by the real parties in interest. Additionally, several of these witnesses had been deposed during the course of discovery. The record further shows that all but three of Bledsoe's trial exhibits were either identified by the real parties in interest in their exhibit list, were documents within their possession, or were documents that had been produced to them by Bledsoe.

Despite this record, real parties in interest argued that they had "prepared [their] case based on [Bledsoe] having no witnesses, no exhibits and no special issues." This argument establishes only that they presumed, even before they requested the sanctions, that the probate court would strike these matters. It does not show how they would be prejudiced in light of the witnesses and exhibits that were made available or known to them well before the pretrial hearing and long before the October 24 trial date. On this record, the real parties in interest have shown no prejudice. We conclude that the first prong of the *TransAmerican* test has not been met.

### Excessiveness of Sanctions

■ We next determine whether the sanctions imposed are excessive. There is nothing in the record to show that the probate court considered the imposition of lesser sanctions or that lesser sanctions would not have been effective. Nor did the court's docket control order warn Bledsoe that noncompliance with the order, regardless of whether he had retained counsel, would result in the harsh sanctions imposed.

This case also does not present an exceptional situation in which case determinative sanctions may be imposed in the first instance. The record fails to reveal the type of flagrant bad faith conduct or callous disregard of the rules that would justify death penalty sanctions.

Throughout the three year history of this case, there is no evidence that either Bledsoe or his counsel ever failed to comply with discovery or any other court order prior to this instance. Rather, the record indicates that he had completed discovery in accordance with the court's docket control order. At the time of the pretrial hearing and pleading deadlines, however, Bledsoe was without counsel and had been without counsel for more than a month. As stated earlier, although he had been instructed to promptly retain counsel because of the impending deadlines, there was no inquiry as to whether Bledsoe's failure to do so was the result of any lack of diligence or disregard of the court's admonishment on his part.

Additionally, Bledsoe was assured he would receive all notices and pleadings during the time he was without counsel. While the real parties in interest did file and serve him with their motion for summary judgment during this time, Bledsoe never received any of the pretrial pleadings that were allegedly submitted by the real parties in interest at the pretrial hearing, including their motion in limine that was required to be filed by August 1. Nor is there anything in the record indicating he was served with notice of the time set for the pretrial hearing. While admittedly having notice of the pretrial hearing date and the pleading deadlines, Bledsoe, acting pro se, could have been misled by the conduct of the real parties in interest and the failure to receive any further notice regarding the time set for the pretrial hearing. We conclude that these facts do

not show the type of flagrant bad faith conduct that should preclude a trial on the merits of Bledsoe's affirmative defenses.

Real parties in interest argue that the delay by Bledsoe's counsel of more than six weeks to file his pretrial pleadings shows callous disregard for the probate court's order, which justifies the sanctions imposed. We disagree.

When Bledsoe's current counsel entered the case on August 24, there was nothing in the probate court's files indicating that the August 11 pretrial hearing had taken place or that the real parties in interest had filed or "presented" any of their pretrial pleadings to the court. There is no indication on the court's docket sheet of any August 11 pretrial hearing or any pleadings filed or submitted by the real parties in interest on that date. In fact, the only evidence showing that the hearing took place and that the real parties in interest had submitted their pretrial pleadings came from statements made by their counsel during the October 20 hearing on the motions to strike. Prior to this hearing, the record shows that Bledsoe's counsel believed both parties had missed the pretrial deadlines and that the parties would be treated equally by the court. The real parties in interest admit they did not serve Bledsoe with their pretrial pleadings, required under the docket control order, until September 27.[2] Upon receiving these pleadings, Bledsoe then filed and served his pretrial pleadings. Again, these facts show, at most, that Bledsoe's counsel was misled by the conduct of the real

parties in interest and the court's own files. They do not show counsel's callous disregard for the probate court's docket control order and do not justify precluding a trial on the merits of Bledsoe's affirmative defenses.

## Conclusion

We conclude that the probate court was not justified in imposing death penalty sanctions under its inherent power under rule 166. Accordingly, we hold that the probate court abused its discretion in striking Bledsoe's fact witnesses, trial exhibits, and proposed jury instructions, definitions, and questions and that Bledsoe has no adequate remedy by appeal. Therefore, without hearing oral argument, we conditionally grant Bledsoe's petition for writ of mandamus and direct the probate court to vacate its October 20, 2000 oral order to the extent the order strikes Bledsoe's fact witnesses, trial exhibits, and proposed jury instructions, definitions, and questions. *See* Tex.R.App.P. 52.8(c).

Because Bledsoe does not argue that the striking of his motion in limine or his trial summary constitutes death penalty sanctions, nor does he cite to any authority regarding the propriety of the probate court's order with respect to these two pleadings, we deny Bledsoe's petition for writ of mandamus to the extent it complains of the probate court's order striking his motion in limine and trial summary.

We are confident that the probate court will vacate its October 20, 2000 order as

2. Real parties in interest claim that, under the docket control order, they were not required to file their pretrial pleadings, but only had to "present" them to the court; therefore, they were not required to serve Bledsoe with their pleadings. Rule 21 of the Texas Rules of Civil Procedure requires that all other parties be served with every pleading or motion to the court at the time they are either presented to

the court at a hearing or trial or filed with the court clerk. Tex.R.Civ.P. 21. Even though Bledsoe failed to attend the pretrial hearing, real parties in interest were still required to serve him with their pleadings. We also note that, despite their contentions, real parties in interest filed their pretrial pleadings with the probate court on October 31.

we have directed, and our writ will issue only if the court refuses to do so.