

NUMBER 13-12-00649-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

S. MITCHELL AND P. MITCHELL,                                    Appellants,

v.

AMERICAN HOME MORTGAGE
SERVICING, INC., AND WELLS
FARGO BANK, N.A. AS TRUSTEE
FOR OPTION ONE MORTGAGE
LOAN TRUST 2001-AN ASSET-
BACKED CERTIFICATES, SERIES
2001-A,                                                        Appellees.

On appeal from the 236th District Court
of Tarrant County, Texas.

# MEMORANDUM OPINION

Before Justices Garza, Benavides, and Perkes
Memorandum Opinion by Justice Garza

By three issues, which we will address as two, appellant spouses S. Mitchell and P. Mitchell[1] (the "Mitchells"), appeal the trial court's order dismissing their lawsuit with prejudice for discovery abuse. We affirm.

## I. BACKGROUND[2]

Appellees American Home Mortgage Servicing, Inc. and Wells Fargo Bank, N.A. (collectively "AHMSI") are, respectively, the servicers and owners of the mortgage on the Mitchells' house. AHMSI gave notice for a non-judicial foreclosure sale of the house because the Mitchells allegedly had not made a payment on the mortgage since 2009. The Mitchells filed suit for an injunction to block the sale. The suit alleged violations of the Texas Debt Collection Act, the Texas Deceptive Trade Practices Act, and common-law wrongful foreclosure. *See* TEX. FIN. CODE ANN. § 392.301(a)(8) (West 2006); TEX. BUS. & COM. CODE ANN. § 17.46(b)(24) (West 2011).

AHMSI filed a motion to compel discovery after the Mitchells did not respond to AHMSI's initial written interrogatories and requests for production. The trial court granted the motion and ordered the Mitchells to provide complete written answers by January 17, 2012 and awarded $500 in attorney's fees to AHMSI ("First Order"). It appears that the Mitchells have not yet paid the attorney's fee award, and the Mitchells did not answer discovery until some point after the deadline but before the show cause hearing.

---

[1] The Mitchells' full names do not appear in the briefs or the clerk's record. There is also no reporter's record associated with this appeal.

[2] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

AHMSI noticed the deposition of both Mitchells for January 19, 2012 and sent multiple requests to the Mitchells' counsel offering to reschedule on a date when both Mitchells would be available. The Mitchells' counsel responded once and asked to schedule the depositions for "one of the [sic] out dates we discussed yesterday" or for a date after February 7. The Mitchells' counsel did not offer a specific date in that letter and evidently did not contact AHMSI again before January 19. It is uncontested that the Mitchells did not appear at the scheduled deposition on January 19 and did not contact AHMSI's counsel to inform him that they would not attend. The court reporter entered certificates of nonappearance for both Mitchells at the request of AHMSI's counsel.

AHMSI filed a motion for sanctions and an alternative motion to compel depositions. Before the trial court ruled on the motion, the Mitchells' counsel sent a letter to AHMSI stating that Mrs. Mitchell, a school teacher, would not be available to give her deposition until the end of the school year in May, and that Mr. Mitchell, an attorney, would be unavailable in April because of an out-of-state criminal trial in federal court. The letter proposed a range of dates in May for Mr. Mitchell's deposition but did not offer a date for Mrs. Mitchell's deposition. There is no response from AHMSI in the record. The trial court did not rule on the motion for sanctions but granted the motion to compel depositions ("Second Order"). The Second Order instructed both Mitchells to give their depositions by April 30, 2012 and to deposit $36,000 in the court registry "as security for proceeding with their case."[3] The Second Order states that if the Mitchells did not comply with its terms, the case "may be dismissed with prejudice to refiling of the same." It is uncontested that the Mitchells did not give their depositions by the April

---

[3] The record indicates that $36,000 equaled the sum of the unpaid payments on the Mitchells' mortgage at the time.

3

30 deadline and never paid any money into the court registry. There is nothing in the record to indicate that the Mitchells ever informed the trial court of their timing conflicts or requested relief from either portion of the Second Order.

AHMSI filed a motion asking the trial court to hold the Mitchells in contempt for not complying with the Second Order and, alternatively, to dismiss the Mitchells' case with prejudice. The trial court issued an order setting a hearing on AHMSI's motion and ordered the Mitchells to appear in person ("Show Cause Order"). After the trial court issued the Show Cause Order, the Mitchells' counsel sent another letter to AHMSI offering to schedule the deposition of both Mitchells for June 15. There is no response from AHMSI in the record.

On the day of the show cause hearing, the Mitchells' counsel filed a written response to the Show Cause Order, but the Mitchells themselves did not appear in person. The Mitchells' counsel appeared at the hearing but did not request that a reporter's record of the hearing be made part of the appellate record. After the hearing, the trial court entered an order dismissing the Mitchells' case with prejudice. The Mitchells filed a motion for new trial that was denied by operation of law.[4] *See* TEX. R. APP. P. 28.1(c). This appeal followed.[5]

---

[4] The Mitchells entitled their motion "Motion to Vacate Judgment," but they asked that the trial court treat the motion "in the nature of a Motion for New Trial."

[5] The Mitchells did not appear when this case was called for oral argument in Fort Worth on July 24, 2013. We permitted AHMSI's counsel to argue but sent the Mitchells' counsel a recording of the argument and allowed them twenty days to file a post-submission brief. The Mitchells did not file a post-submission brief with this Court.

4

## II. ANALYSIS

### A. Standard of Review and Applicable Law

The trial court may impose the sanction of dismissing a case with prejudice for abuse of the discovery process. TEX. R. CIV. P. 215.2(b)(5), 215.3. We review a trial court's ruling on a motion for sanctions for abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004) (citing *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238, 241 (Tex. 1985)). A trial court abuses its discretion when it acts without reference to guiding rules or principles. *Id.* at 839.

Dismissing a case with prejudice for discovery violations is a "death penalty" sanction, that is a "sanction that adjudicates a claim and precludes the presentation of the case on the merits." *In re Bledsoe*, 41 S.W.3d 807, 812 (Tex. App.—Fort Worth 2001, no pet.). "In determining whether to impose death penalty sanctions, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation." *Buck v. Estate of Buck*, 291 S.W.3d 46, 55–56 (Tex. App.—Corpus Christi 2009, no pet.). The rules "leave the choice of sanctions to the sound discretion of the trial court" but any sanctions that are imposed must be "just." *Transam. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *see Buck*, 291 S.W.3d at 55.

In determining whether a sanction is just, we independently review the entire record. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *5 Star Diamond, LLC v. Singh,* 369 S.W.3d 572, 577 (Tex. App.—Dallas 2012, no pet.). The Texas Supreme Court has announced a two-part test for determining whether a sanction is just. The first prong requires that there "be a direct nexus among

5

the offensive conduct, the offender, and the sanction imposed." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (citing *Transam.*, 811 S.W.2d at 917). This "means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Cire*, 134 S.W.3d at 839. The second prong requires that the sanctions not be excessive. *Id.* A sanction is not excessive if it is "no more severe than necessary to satisfy its legitimate purposes." *Id.* The purposes of a discovery sanction are to: (1) secure compliance with discovery rules; (2) deter other litigants from similar misconduct; and (3) punish violators. *Id.*; *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

Even if imposing a death penalty sanction furthers these legitimate objectives, "these considerations alone cannot justify trial by sanction." *Chrysler Corp.*, 841 S.W.2d at 849. Death penalty sanctions "may only be imposed in exceptional cases where they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *Cire*, 134 S.W.3d at 840–41 (internal quotations omitted). Trial courts must first "consider less stringent sanctions and whether such lesser sanctions would fully promote compliance" before imposing case-determinative sanctions. *Id.* at 841; *Spohn Hosp.*, 104 S.W.3d at 882 (citing *Transam.*, 811 S.W.2d at 917). The sanctioned party's conduct must either "justif[y] a presumption that its claims or defenses lack merit" or there must be "evidence in the record of flagrant bad faith or counsel's callous disregard for the obligations of discovery." *Chrysler Corp.*, 841 S.W.2d at 850 (citing *Transam.*, 811 S.W.2d at 918).

6

**B. Discussion**

By their first issue, the Mitchells argue that the trial court erred in basing its order dismissing their case in part on their failure to deposit the $36,000 in the court registry because the only consequence for failing to post a bond in a case requesting temporary injunctive relief is that relief will not be granted. The Mitchells cite one case in support of this argument, a habeas proceeding brought by a woman who had been jailed for contempt of court for violating a temporary restraining order. *See Ex parte Jordan*, 787 S.W.2d 367, 368 (Tex. 1990) (per curiam). The Texas Supreme Court ordered the petitioner discharged because the temporary restraining order was void for not requiring a separate bond as required by rule. *Id.*; *see* Tex. R. Civ. P. 684 (requiring an applicant for a temporary restraining order or temporary injunctive relief to post a bond). There is nothing in the record indicating that the court required the Mitchells to post the $36,000 as a bond for injunctive relief. Rather, the trial court ordered the Mitchells to deposit the money, which equaled the sum total of their allegedly delinquent mortgage payments, as security for proceeding with their case. In any event, we see nothing in *Ex parte Jordan* holding or implying that a party's failure to post a security that the trial court specifically ordered the party to post cannot form a part of the basis for dismissing a case with prejudice. The Mitchells' first issue therefore has no merit. We overrule the Mitchells' first issue.

By their next two issues, the Mitchells argue that the trial court erred in dismissing their suit with prejudice because (1) by the time of the show cause hearing, "there was no direct relationship between a perceivable offense and the death penalty sanction imposed"; and (2) "a lesser sanction than dismissal with prejudice would have

7

been appropriate." The Mitchells present these as separate issues, but each really addresses the two prongs of the test for whether a sanction is "just." *See Spohn Hosp.*, 104 S.W.3d at 882. Accordingly, we will consider them together.

The Mitchells first argue that dismissing their suit with prejudice does not have a connection with any particular "perceivable offense" because by the time of the show cause hearing, the Mitchells had responded to discovery and made themselves available for depositions. *See id.* (requiring that there be a "direct nexus" between a sanction and the offensive conduct). We disagree. Our independent review of the record reveals several offenses involving the Mitchells' refusal to obey the trial court's First and Second Orders and the Show Cause Order. It is uncontested that the Mitchells did not answer discovery or give their depositions before the deadlines in the orders. It is also uncontested that the Mitchells did not pay any part of the $36,000 into the court registry as required by the Second Order or appear before the trial court as required by the Show Cause Order. We thus conclude that the sanction bears a direct relationship to the Mitchells' refusal to obey the trial court.

The Mitchells next assert that "a lesser sanction than dismissal with prejudice would have been appropriate." They argue that the dismissal with prejudice was "more severe than necessary to promote full compliance with the rules." *See GTE Comm'ns Sys. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding) ("Case determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules."). The Mitchells assert that dismissing their case with prejudice was "excessive and unjustified, particularly given their conduct in

8

completely responding to discovery and offering themselves for depositions." Again, we disagree.

We have reviewed the entire record, and it is evident that the Mitchells did not simply ignore their discovery obligations; they consistently refused to obey almost every directive of the trial court. The trial court expressly ordered the Mitchells to do three things before a certain deadline: (1) give written responses to AHMSI's discovery questions, (2) give depositions, and (3) pay $36,000 into the court registry. It is uncontested that the Mitchells did not respond to discovery until some time after the deadline, never gave depositions, and never paid money into the registry. The record reflects that the Mitchells did not inform the trial court of any reason that they were unable to timely comply with the orders, request relief from any of the orders, or challenge any of the orders on appeal. Furthermore, the record is devoid of any explanation for the Mitchells' behavior; the written response to the show cause order, the subsequent motion for a new trial, and the Mitchells' appellate brief is silent in that regard. The trial court afforded the Mitchells an opportunity to explain their conduct by appearing in person at the show cause hearing, but the Mitchells failed to appear and did not request a reporter's record of the hearing to assist us in resolving this appeal. *See* TEX. R. APP. P. 34.6(b) (providing that the appellant must request the reporter's record in writing). When an appellant does not file a complete reporter's record or comply with the rules for designating a partial reporter's record, appellate courts will presume that the omitted record supports the trial court's order. *Haut v. Green Café Mgmt., Inc.*, 376 S.W.3d 171, 180 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App.—Houston

9

[14th Dist.] 2000, pet. denied). Accordingly, we will presume that the record of the hearing reflects that the trial court found that any explanation for the Mitchells' past behavior offered by counsel at the hearing was insufficient or that the Mitchells' conduct justified a presumption that their claims or defenses lacked merit. *See Haut*, 376 S.W.3d at 180; *Sandoval*, 25 S.W.3d at 722.

Before dismissing the Mitchells' case with prejudice, the trial court complied with the Texas Supreme Court's command that it must first at least consider imposing lesser sanctions. *See Spohn Hosp.,* 104 S.W.3d at 882 ("We require courts to consider less stringent sanctions and whether such lesser sanctions would fully promote compliance."). The trial court imposed the lesser sanction of an award of $500 in attorney's fees for violation of the First Order, which is, apparently, still unpaid. The Show Cause Order reflects that the trial court was considering contempt proceedings and that dismissal with prejudice was only requested by AHMSI in the alternative. Contempt is a lesser sanction that is expressly contemplated by the rule for discovery violations. TEX. R. CIV. P. 215.2(b)(6). It was only after the Mitchells failed to appear at the contempt hearing that the trial court entered an order dismissing the Mitchells' case with prejudice. As we have stated, we will presume that the transcript of the hearing supports the trial court's order. *See Haut*, 376 S.W.3d at 180; *Sandoval*, 25 S.W.3d at 722.

In sum, our review of the entire record reveals that the Mitchells never timely obeyed the trial court's orders, failed to fulfill their duty to timely comply with their discovery obligations, never explained their behavior, and that the trial court considered imposing the lesser sanctions of attorney's fees and contempt of court. Accordingly, we

10

conclude that the trial court did not abuse its discretion in concluding that this is an exceptional case where dismissal with prejudice was warranted. *See Cire*, 134 S.W.3d at 840–41 (observing that case-determinative sanctions may only be imposed in "exceptional cases" where no lesser sanction would be sufficient to induce compliance with the rules). We overrule the Mitchells' second and third issues on appeal.

### III. CONCLUSION

We affirm the order of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
12th day of September, 2013.