**Opinion issued October 26, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-23-00372-CV**

————————————

**IN RE XLS, INC. D/B/A XXCELL FREIGHT SYSTEMS, RAMON ARQUIMIDES FLORES, AND GEOVANIS PUPO-MARTINEZ, Relators**

**Original Proceeding on Petition for Writ of Mandamus**

## MEMORANDUM OPINION

Relators, XLS, Inc., doing business as XXCell Freight Systems ("XLS"), Ramon Arquimides Flores ("Flores"), and Geovanis Pupo-Martinez ("Martinez") (collectively, "relators"), filed a petition for a writ of mandamus, challenging the trial court's April 14, 2023 rulings striking XLS's pleadings and the counter-affidavits filed by relators. In two issues, relators contend that the trial court erred in striking XLS's pleadings and relators' counter-affidavits.

We conditionally grant the petition.[1]

## Background

The underlying proceeding arises out of a traffic collision in San Patricio County, Texas, on April 30, 2019. In his second amended petition, real party in interest, Thuan Nguyen ("Nguyen"), alleged that he was driving on State Highway 35 when an 18-wheel tractor-trailer, driven by Martinez, "attempted to make a left turn from the right shoulder [of the highway] in front of [Nguyen]." According to Nguyen, Martinez "block[ed] the entire highway" and caused Nguyen's car "to collide with the rear driver's side" of the tractor-trailer. Nguyen sustained injuries to his head, neck, back, and other parts of his body.

Nguyen further alleged that Flores owned the tractor-trailer that was driven by Martinez on April 30, 2019 and Martinez was acting in the course and scope of his employment with XLS at the time of the collision. Nguyen brought claims against relators for negligence and gross negligence. Nguyen sought damages for past and future medical expenses, asserting that because of his injuries he had incurred reasonable and necessary expenses.

---

[1] The underlying case is *Thuan Nguyen v. XLS, Inc. d/b/a XXCell Freight Systems, Ramon Arquimides Flores, and Geovanis Pupo-Martinez*, Cause No. 2019-40355, in the 80th District Court of Harris County, Texas, the Honorable Jeralynn Manor presiding.

2

Relators answered, generally denying the allegations in Nguyen's petition and asserting various defenses.

On October 24, 2019, XLS served its Answers and Objections to Nguyen's First Set of Interrogatories, its Responses and Objections to Nguyen's Request for Admission, and its Responses and Objections to Nguyen's Request for Production. On November 26, 2019, Nguyen filed a Motion to Compel Answers and Responses to Discovery Requests, asserting that although XLS had served a response to Nguyen's discovery requests, XLS also asserted "numerous improper objections." Nguyen requested that the trial court compel XLS to withdraw its improper objections, provide documents responsive to Nguyen's Request for Production, and fully answer Nguyen's First Set of Interrogatories. The record does not reflect that the trial court ruled on Nguyen's motion to compel or that it entered any discovery orders as to XLS. On December 24, 2019, XLS served its Supplemental Responses and Objections to Nguyen's Request for Production and its Supplemental Answers and Objections to Nguyen's First Set of Interrogatories.

On March 8, 2023, Nguyen filed a Motion to Compel Discovery/Depositions or Alternatively, Motion for Texas Rule of Civil Procedure 215 Discovery Sanctions (the "March 8 motion"), asserting that "XLS [was] no longer in business and ha[d] ceased all communication, cooperation and/or assistance in the defense of [Nguyen's] claims" and thus Nguyen was "being denied discovery and critical

3

evidence necessary to prepare for trial." According to Nguyen, two XLS employees had failed to appear for their depositions and XLS had "failed to adequately and timely respond to [certain] written discovery." Nguyen requested that XLS be ordered to provide full and complete discovery responses and present relevant witnesses for depositions. Alternatively, Nguyen requested Texas Rule of Civil Procedure 215 sanctions for discovery abuse, including "an order striking all [of] XLS's pleadings/defenses" and "enter[ing] a default judgment in favor of [Nguyen on his] claims relating to" XLS.

In its response to the March 8 motion, XLS asserted that after it served its Supplemental Responses and Objections to Nguyen's Request for Production and its Supplemental Answers and Objections to Nguyen's First Set of Interrogatories in December 2019, "XLS ha[d] . . . forfeited its existence and [wa]s no longer an operating entity. . . . XLS ha[d] no employees and ha[d] no control over any of its former employees—including John Cruise [('Cruise')]," the individual who had initially responded to Nguyen's First Set of Interrogatories on XLS's behalf. XLS noted that it had made efforts "to contact Cruise and present him for deposition," but it was unable to do so. XLS had informed Nguyen's attorney "several times of this fact."[2] XLS also asserted that it had not "abandoned" the litigation, and it listed

---

[2] XLS noted that Nguyen, on July 13, 2022, unilaterally noticed the deposition of Cruise and a "corporate representative" of XLS, and XLS filed a motion to quash. Further, according to XLS, although it provided Nguyen with alternative dates that

4

various ways in which it had "actively litigated [the] matter and participated in discovery to the extent th[at] [it had] documents and witnesses that [were under its] control."[3]  (Internal quotations omitted.)

On April 12, 2023, Nguyen filed a Motion to Strike Relators' Plea of Payment,[4] Untimely and Improperly Obtained Affidavits, All Counter-Affidavits, Expert Testimony of Sandip Gupta, and Motion for Texas Rule of Civil Procedure 215 Discovery Sanctions and Texas Rule of Civil Procedure 503.1 Post-Answer Default Judgment (the "April 12 motion").  In the April 12 motion, Nguyen requested that the trial court strike XLS's pleadings because (1) XLS and Flores might not appear at trial; (2) XLS had refused to produce documents or appear for depositions; and (3) XLS had failed "to defend in any way against" Nguyen's claims. Nguyen also requested that the trial court strike the counter-affidavits of Gupta,[5]

---

it was available for deposition, it explained that it was not in control or contact with Cruise or any other former employees of XLS.  In response, Nguyen filed a Motion to Compel Answers and Responses to his Discovery Requests to XLS and to Compel Depositions of Corporate Representative and Cruise.  That motion was not ruled on by the trial court.  On October 11, 2022, Nguyen again unilaterally noticed the deposition of Cruise and a "corporate representative" of XLS.  XLS was present at the deposition, but Cruise did not appear.

[3]     Nguyen filed a reply to XLS's response to the March 8 motion.  The trial court did not issue an order or ruling on the March 8 motion.

[4]     Relators filed a Texas Rule of Civil Procedure 95 Plea of Payment on April 6, 2023. *See* TEX. R. CIV. P. 95.

[5]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(f).  Gupta, in his counter-affidavits, states that he is the Director of Data Services and Market Pricing Intelligence of Compass Professional Health Services, a healthcare cost

5

which relators had filed in response to the affidavits Nguyen produced from various medical providers concerning the reasonableness and necessity of the medical treatment Nguyen received after the collision.[6]

In their response to the April 12 motion, relators explained that during the litigation, Nguyen had served medical billing records with attached affidavits on relators "in an attempt to establish [Nguyen's] medical care cost claim" and relators, pursuant to Texas Civil Practice and Remedies Code section 18.001, had "responded by producing, and timely filing, several counter-affidavits contesting the reasonableness of the [medical] expenses" sought by Nguyen. Relators also explained why their counter-affidavits were proper.

As to Nguyen's request for "death penalty" sanctions against relators for discovery abuse, relators explained that XLS was "no longer an operating entity and ha[d] forfeited its existence." As such, XLS no longer had control over Cruise or any of its former employees, and XLS had "not designated anyone to testify on its behalf." XLS did not have "contact [with] or control [over] any individual with knowledge of the topics outlined in [Nguyen's] notice[] of deposition for a

---

containment company with expertise in the reasonableness and necessity of medical care charges.

[6]    *See id.* § 18.001(b).

'corporate representative' of XLS and d[id] not have the ability . . . to supplement o[r] amend its responses to discovery."

Further, relators argued that Nguyen had not been denied critical evidence to prepare for trial because relators had provided him with documents available to them related to the collision. And according to relators, they had "actively litigated th[e] matter and participated in discovery to the extent of the documents and witnesses that [were] in their control."

On April 14, 2023, the trial court held a hearing on the April 12 motion. During the hearing, Nguyen did not introduce any exhibits into evidence or present witnesses. Related to Nguyen's request to strike the counter-affidavits of Gupta, relators informed the trial court that Gupta was not going to testify at trial. But Nguyen challenged Gupta's qualifications, asserting that "many judges ha[d] found that he[] [was] not qualified to testify on the[] issues." Further, Nguyen asserted that Gupta's counter-affidavits "[we]re inconsistent with what actually took place in this case" and that Gupta was "not a doctor . . . and [his] opinions . . . would be misleading to the jury because they[] [were] just not true." Later during the hearing, Nguyen stated that he was only challenging Gupta's methodology and not his qualifications.[7]

---

[7]  At his deposition, on June 11, 2021, Gupta testified as to the methodology used in his counter-affidavits.

7

As to his request for sanctions, Nguyen argued that the trial court should order sanctions against relators because of "the long-standing discovery abuse that [Nguyen] had to deal with" during the litigation and because XLS and Flores were not going to appear for trial. Nguyen also asserted that relators had failed to produce certain documents and "failed to participate in any way whatsoever in the discovery process." Nguyen asked that relators' counsel be "barred and banned" from presenting any evidence on behalf of XLS and Flores at trial.

Relators responded by asserting that there was not sufficient evidence of any wrongful conduct on their part to justify "death penalty" sanctions. Relators explained that Cruise was a former employee of XLS and not XLS's corporate representative, and thus as a result, sanctions under Texas Rule of Civil Procedure 215.2(b), which applies only to a witness designated by a party, could not be imposed against XLS.[8] Relators also noted that Martinez and Flores would be present for trial, and relators' counsel explained that he was still representing XLS, but he did not "have a human being" to be present at trial because XLS no longer existed.

At the conclusion of the hearing, the trial court announced that it was "going to strike the counter-affidavits of . . . Gupta[] and [it was] also striking the pleadings

---

[8] Texas Rule of Civil Procedure 215.2(b) provides that "[i]f a party or an officer, director, or managing agent of a party or a person designed under [Texas] Rules [of Civil Procedure] 199.2(b)(1) or 200.1(b) to testify on behalf of a party fails to comply with proper discovery requests or to obey an order to permit discovery" the trial court may order sanctions. *See* TEX. R. CIV. P. 215.2(b).

8

of XLS." The trial court further stated that it was "not finding that [Gupta was] not qualified." The trial court then declined to give relators a reason for striking Gupta's counter-affidavits. As to XLS, the trial court stated that it struck XLS's pleadings for "[n]ot appearing in the case[] [and] not participating in discovery."

## Standard of Review

We may issue a writ of mandamus to correct a trial court's clear abuse of discretion or violation of a duty imposed by law when no adequate remedy by appeal exists. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles. *See In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). Further, "[t]rial courts have no discretion in determining what the law is or applying the law to the facts." *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 763 (Tex. 2020).

## "Death Penalty" Sanction

In their first issue, relators argue that the trial court erred in striking the pleadings of XLS because there was no evidence showing that XLS had violated any discovery order, failed to comply with any discovery obligation, or committed any other act that would justify the imposition of sanctions. Further, relators argue that they lack an adequate remedy by appeal because the imposition of a "death penalty"

9

sanction "precludes a decision on the merits of a case" and "has the effect of adjudicating all or part of the dispute."

## A.     Trial Court Abused its Discretion by Imposing "Death Penalty" Sanction

Discovery sanctions, such as the striking of pleadings, serve to secure compliance with the discovery rules, deter other litigants from violating the discovery rules, and punish those who violate the rules. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.—Dallas 2009, pet. denied); *see also* TEX. R. CIV. P. 215.2.  A trial court has discretion, pursuant to Texas Rule of Civil Procedure 215.2, to determine an appropriate sanction for a party's failure to comply with discovery requests.  *See* TEX. R. CIV. P. 215.2; *Glash v. Glash*, No. 14-05-00846-CV, 2006 WL 2862217, at *3 (Tex. App.—Houston [14th Dist.] Oct. 10, 2006, no pet.) (mem. op.); *see also TransAm. Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).  But any sanction imposed by the trial court must be "just."  *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (internal quotations omitted); *see also TransAm.*, 811 S.W.2d at 917; *Glash*, 2006 WL 2862217, at *3.  The imposition of a sanction that is not "just" is an abuse of discretion.  *See TransAm.*, 811 S.W.2d at 917; *In re C.G.C.*, No. 12-08-00253-CV, 2010 WL 338062, at *5 (Tex. App.—Tyler Jan. 29, 2010, no pet.) (mem. op.).

When a trial court imposes a discovery sanction by striking a party's pleadings, four factors determine whether the sanction is just:

> (1) the sanction must bear a direct relationship to the offensive conduct; (2) the sanction must not be excessive; (3) the trial court must first impose a less stringent sanction; and (4) the trial court should not deny a trial on the merits, unless it finds that the sanctioned party's conduct justifies a presumption that its claims or defenses lack merit and that it would be unjust to permit the party to present the substance of that position which is the subject of the withheld discovery before the court.

*Warwick Oil & Gas, Inc. v. FBS Props., Inc.*, No. 01-14-00290-CV, 2015 WL 3637988, at *4 (Tex. App.—Houston [1st Dist.] June 11, 2015, no pet.) (mem. op.).

At the conclusion of the hearing on the April 12 motion, the trial court struck XLS's pleadings for "[n]ot appearing in the case[] [and] not participating in discovery." *See In re Bledsoe*, 41 S.W.3d 807, 813 (Tex. App.—Fort Worth 2001, orig. proceeding) (striking of pleadings constitutes "death penalty" sanction). But nothing in the record demonstrates that this type of sanction was "just."

First, the striking of XLS's pleadings did not bear a direct relationship to any offensive conduct purportedly committed by XLS. Although the trial court stated at the hearing that XLS had not appeared in the case and had not participated in discovery, counsel for XLS appeared in the case on multiple occasions via motion, and in person at the hearing on the April 12 motion, and counsel explained to the trial court that XLS was no longer an operating entity, but that counsel still represented XLS "because of insurance issues."

11

Further, the record reflects that XLS did in fact participate in discovery. On October 24, 2019, XLS served its Answers and Objections to Nguyen's First Set of Interrogatories, its Responses and Objections to Nguyen's Request for Admission, and its Responses and Objections to Nguyen's Request for Production. And in response to Nguyen's November 26, 2019 Motion to Compel Answers and Responses to Discovery Requests, on December 24, 2019, XLS served its Supplemental Responses and Objections to Nguyen's Request for Production and its Supplemental Answers and Objections to Nguyen's First Set of Interrogatories. Additionally, after Nguyen unilaterally noticed the deposition of Cruise and a XLS "corporate representative" on July 13, 2022, XLS filed a motion to quash, explaining that it had provided Nguyen with alternative dates that it was available for deposition, but it had no control or contact with Cruise or any other former employees of XLS. When Nguyen again unilaterally noticed the deposition of Cruise and a XLS "corporate representative" on October 11, 2022, XLS was present for the deposition, although Cruise did not appear. Still yet, XLS filed responses to the March 8 and the April 12 motions related to discovery issues and sanctions, and at the hearing on the April 12 motion, counsel put forth a vigorous defense on XLS's behalf.

Second, the trial court's striking of XLS's pleadings was an excessive sanction. A sanction imposed for discovery abuse "should be no more severe than

necessary to satisfy [its] legitimate purposes." *TransAm.*, 811 S.W.2d at 917; *see also Mayer*, 104 S.W.3d at 882; *In re Hood*, 113 S.W.3d 525, 529 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). Here, the record is void of a legitimate purpose for the imposition of a "death penalty" sanction. *See In re Bledsoe*, 41 S.W.3d at 813. When taking into consideration that XLS had dissolved as a corporation, and no longer had control over Cruise, a former employee of XLS, or any other former XLS employee, the trial court should not have imposed a "death penalty" sanction against XLS due to Cruise's failure to appear for a deposition. Notably, the record reflects that while three motions to compel discovery against XLS were filed by Nguyen, it does not appear that the trial court ruled on such motions. Under these circumstances, the sanction of striking the pleadings of XLS is more severe than necessary to satisfy the legitimate purposes of a discovery sanction. *See Mayer*, 104 S.W.3d at 883 ("Discovery sanctions that are so severe as to inhibit the presentation of the merits of a case should be reserved to address a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.").

Third, the record reflects that the trial court failed to first impose a less stringent sanction. Courts must consider the availability of less stringent sanctions, and whether such lesser sanctions would fully promote compliance. *TransAm.*, 811 S.W.2d at 917; *In re C.G.C.*, 2010 WL 338062, at *5 ("Lesser sanctions must first

13

be tested to determine whether they are adequate before a sanction that prevents a decision on the merits of a case can be justified."). Striking a party's pleadings for discovery abuse is "the most devastating" sanction a trial court may impose. *TransAm.*, 811 S.W.2d at 917–18. A trial court may strike a party's pleadings only after a lesser sanction has been imposed against the party, and the party still refuses to produce the requested discovery despite the lesser sanction. *See Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991); *TransAm.*, 811 S.W.2d at 918; *see also Brooks v. Schwartz*, No. 01-91-00499-CV, 1992 WL 205821, at *1 (Tex. App.— Houston [1st Dist.] Aug. 26, 1992, no pet.) (not designated for publication). Here, the trial court imposed no such lesser sanction before striking XLS's pleadings. *See, e.g.*, *Brooks v. Schwartz*, 1992 WL 205821, at *1 (trial court abused its discretion in dismissing relator's lawsuit before imposing less harsh sanction). Thus, the trial court erred by not first imposing a sanction of a less stringent nature against XLS. *Cf. Pryor v. State*, No. 14-05-00411-CV, 2006 WL 1528963, at *2 (Tex. App.— Houston [14th Dist.] June 6, 2006, no pet.) (mem. op.) (trial court did not abuse its discretion in striking party's pleadings because it "instituted two lesser sanctions before striking [party's] pleadings"); *see also Approximately $5,602.00 v. State*, No. 14-08-00359-CV, 2009 WL 1886127, at *2 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (mem. op.) (trial court did not abuse its discretion in striking party's

14

pleadings and entering default judgment against him where trial court first imposed lesser sanction that party ignored).

Fourth, there is nothing in the record to suggest that XLS's conduct justified a presumption that its claims or defenses lack merit and that it would have been unjust to permit XLS to present its case at trial by putting forth evidence that is the subject of the withheld discovery before the court. Notably, prior to striking XLS's pleadings in this case, the trial court did not issue a single order compelling XLS to provide Nguyen with any discovery.

Because the record does not establish that the sanction imposed by the trial court was "just," we hold that the trial court's "death penalty" sanction of striking XLS's pleadings was excessive and constituted an abuse of discretion.

## B. XLS Has No Adequate Remedy by Way of Appeal

"When a [trial] court imposes discovery sanctions that have the effect of precluding a decision on the merits of a party's claim—such as striking pleadings— a party's eventual remedy by appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment." *In re Hood*, 113 S.W.3d at 528–29 (concluding relator had no adequate remedy by appeal for "death penalty" sanctions imposed against him).

Here, the trial court's striking of XLS's pleadings constituted a "death penalty" sanction. *See In re Bledsoe*, 41 S.W.3d at 813; *see also TransAm.*, 811

15

S.W.2d at 917–19.  As such, we hold that XLS lacks an adequate remedy by way of appeal and mandamus relief is appropriate.  *See In re Hood*, 113 S.W.3d at 528.

We sustain relators' first issue.

### Counter-Affidavits

In their second issue, relators argue that the trial court erred in striking relators' counter-affidavits because Gupta was qualified to execute the counter-affidavits and the trial court "did not identify any other deficiency" in the counter-affidavits.  Relators also argue that they lack an adequate remedy by way of appeal because the striking of Texas Civil Practice and Remedies Code chapter 18 counter-affidavits "can turn a purely procedural statute into a death penalty on the issue of past medical expenses."  (Internal quotations omitted.)

### A.    The Trial Court Abused its Discretion by Striking Relators' Counter-Affidavits

Generally, a plaintiff seeking to recover past medical expenses must prove that the amounts he paid or incurred were reasonable.  *See In re Chefs' Produce of Houston, Inc.*, 667 S.W.3d 297, 301 (Tex. 2023).  Unless a plaintiff avails himself of the procedures outlined in Texas Civil Practice and Remedies Code section 18.001, he must present expert testimony at trial to establish that his medical expenses are reasonable and necessary.  *Id.*

Texas Civil Practice and Remedies Code section 18.001 allows a plaintiff to present evidence that his medical expenses were reasonable and necessary through

16

an uncontroverted affidavit that complies with the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b); *In re Chefs' Produce*, 667 S.W.3d at 301. To qualify, the affidavit must be prepared by the person who provided the medical services or the person in charge of the records showing that the plaintiff received and incurred the charges. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(c); *In re Chefs' Produce*, 667 S.W.3d at 301. An uncontroverted affidavit that complies with section 18.001 is sufficient evidence—but not conclusive evidence—that the plaintiff's medical expenses were reasonable and necessary. *Id.* At trial, the defendants may still challenge—through evidence and argument—a plaintiff's assertion that his medical expenses were reasonable and necessary. *Id.*

Notably, Texas Civil Practice and Remedies Code section 18.001 also provides the defendants a means to controvert the plaintiff's affidavit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(f); *In re Chefs' Produce*, 667 S.W.3d at 301. Specifically, the defendants can serve the plaintiff with a counter-affidavit that provides reasonable notice of the basis on which the defendants intend to controvert the reasonableness and necessity of the proffered medical expenses at trial. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(f); *In re Chefs' Produce*, 667 S.W.3d at 301.

"A [defendant] intending to controvert a claim reflected by [an] affidavit must" timely serve a counter-affidavit on each party or the party's attorney. TEX.

CIV. PRAC. & REM. CODE ANN. § 18.001(e). The counter-affidavit must provide "reasonable notice of the basis on which the [defendant] intends at trial to controvert the claim reflected by the initial affidavit" and must be made by a person "who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit." *Id.* § 18.001(f); *see also In re Chefs' Produce*, 667 S.W.3d at 301. In the face of a compliant counter-affidavit, the plaintiff may not reach the jury on the reasonableness and necessity of his medical expenses without expert testimony. *Id.* In effect, the plaintiff's evidentiary burden on that issue is the same as if the initial affidavit had never been served. *Id.*

Here, at the conclusion of the trial court's hearing on the April 12 motion, the trial court gave no basis for its decision to strike the counter-affidavits of Gupta. Although the trial court stated that it was "not finding that [Gupta was] not qualified," we note that we have previously addressed whether Gupta is qualified under Texas Civil Practice and Remedies Code section 18.001(f) to offer an opinion on the reasonableness and necessity of medical expenses. *See In re Houston Distributing Co.*, No. 01-21-00319-CV, 2021 WL 4313118, at *3–4 (Tex. App.—Houston Sept. 23, 2021, no pet.) (mem. op.).

In *In re Houston Distributing*, the plaintiff asserted that Gupta was not qualified to render "a section 18.001(f) opinion about the reasonableness and

18

necessity of [the plaintiff's] medical treatment and costs." *Id.* at *3. We disagreed, concluding that Gupta, based on his knowledge, experience, and training as reflected in his counter-affidavits, had satisfied the qualification requirements to submit counter-affidavits. *Id.* at *4. And we noted that that "[a]lthough Gupta [wa]s not a nurse or medical practitioner, such a requirement [wa]s not necessary to be qualified to submit a counter-affidavit."[9] *Id.* at *4.

Here, as in *In re Houston Distributing*, Gupta stated in his counter-affidavits:

> I am the Director of Data Services and Market Pricing Intelligence of Compass Professional Health Services, a healthcare cost containment company with expertise in the reasonableness and necessity of medical care charges. As Director of Data Services and Market Pricing Intelligence of Compass Professional Health Services, my services have included creation of a database of comparative pricing for health care services for individuals and companies to use in comparing costs of medical services and savings opportunities. I have led the Compass Reporting team who is responsible for providing cost-related reporting back to all of our Compass clients. My background and experience in management and processing of healthcare claims for payment includes those covered and not covered by insurance and has qualified me in the navigation and assessment of what medical charges are reasonable, as well as, what medical charges are paid by various insurance companies. Based upon my experiences, education, and work, I have knowledge regarding the charges, costs, expenses, billing, and payment of medical bills for services rendered and the reasonable amounts charged and paid by medical providers, patients, and third parties, and I am familiar with reasonable medical charges or costs for medical services rendered in Texas, including Bexar County, Harris County, and surrounding counties. Attached to this [a]ffidavit as Exhibit A is a copy of my

---

[9] Relators informed the trial court of this Court's decision in *In re Houston Distributing Co.*, No. 01-21-00319-CV, 2021 WL 4313118 (Tex. App.—Houston Sept. 23, 2021, no pet.) (mem. op.), in arguing in support of Gupta's qualifications during the trial court's hearing on the April 12 motion.

> resume, which is incorporated into this [a]ffidavit by reference, and I attest that every statement in the attached resume is true and correct.

*See id.* at *3 (quoting Gupta's qualifications as listed in his counter-affidavit). Gupta has provided that he works for a healthcare cost containment company with expertise in the reasonableness and necessity of medical care charges, he has created a database of comparative pricing for health care services, and his background and experience qualifies him in the assessment of what medical charges are reasonable. *See id.* at *4. And we conclude, as we did in *In re Houston Distributing*, that based on Gupta's "knowledge, experience, and training as reflected in his counter-affidavit," Gupta "satisfied the qualification requirements to submit a counter-affidavit" concerning the reasonableness and necessity of medical expenses. *Id.*

Although Nguyen did not argue otherwise at the hearing on the April 12 motion, we also conclude that relators' counter-affidavits provided Nguyen with "reasonable notice" as to the basis on which relators intend to controvert Nguyen's initial affidavits regarding the reasonableness and necessity of the medical expenses claimed by Nguyen. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(f). Texas Civil Practice and Remedies Code "[s]ection 18.001 does not define 'reasonable notice,' but its meaning is similar to the familiar 'fair notice' requirement for pleadings under Texas Rule of Civil Procedure 47." *In re Allstate Indem. Co.*, 622 S.W.3d 870, 879 (Tex. 2021) ("[A] pleading sufficiently provides 'fair notice of the

20

claim involved' if the opposing party can ascertain from the pleading the nature and basis issues in controversy and what testimony will be relevant."); *see also* TEX. R. CIV. P. 47(a). This standard can be applied to the instant case to measure whether the counter-affidavits "provided [Nguyen with] sufficient information to enable [him] to prepare a defense or a response." *In re Allstate Indem. Co*., 622 S.W.3d at 879.

Here, Gupta's counter-affidavits itemized each provider whose services are being controverted as unreasonable. And Gupta explained that the charges from various medical providers for services provided to Nguyen were "not reasonable because [such] charges or costs exceed[ed] the customary and reasonable costs in Bexar County, Harris County, and surrounding counties for the same or similar services." Indeed, Nguyen's ability to attack the reliability of Gupta's methodology at the hearing on the April 12 motion is ample evidence that the counter-affidavits provided "reasonable notice" of the bases for relators' challenges.[10] *See In re Allstate Indem. Co*., 622 S.W.3d at 880. Thus, we conclude that relators'

---

[10] In challenging Gupta's methodology, Nguyen asserted at the hearing that Gupta's "opinions [indicated that the average reimbursement rates were] twice as low as the Medicare reimbursement rates." Although "[t]h[is] may be [a] potential bas[is] on which to challenge the admissibility and weight to be ascribed to [Gupta's] opinions at trial," Texas Civil Practice and Remedies Code "section 18.001 does not charge trial courts with determining the admissibility of an affiant's opinions, and a trial court's doubts about admissibility are not a proper basis for striking a section 18.001 counter[-] affidavit." *In re Allstate Indem. Co*., 622 S.W.3d 870, 879 (Tex. 2021).

counter-affidavits met Texas Civil Practice and Remedies Code section 18.001(f)'s reasonable-notice standard.

Based on the foregoing, we hold that the trial court abused its discretion in striking relators' counter-affidavits, which complied with Texas Civil Practice and Remedies Code section 18.001.

## B.      Relators Have No Adequate Remedy by Way of Appeal

A party lacks an adequate remedy by appeal when a trial court wrongfully strikes counter-affidavits submitted pursuant to Texas Civil Practice and Remedies Code section 18.001(f).  *See In re Chefs' Produce*, 667 S.W.3d at 303; *In re Allstate Indem. Co*., 622 S.W.3d at 883 (concluding relator lacked adequate remedy because trial court order "would preclude [relator] from engaging in meaningful adversarial adjudication of [real party in interest's] claim for payment of medical expenses, vitiating or severely compromising [relator's] defense").  Here, because we have held that the trial court wrongfully struck relators' counter-affidavits, we hold that relators lack an adequate remedy by way of appeal and mandamus relief is appropriate.

We sustain relators' second issue.

## Conclusion

We conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its April 14, 2023 rulings striking the pleadings of XLS and relators' counter-affidavits. Our writ will issue only if the trial court fails to act. We dismiss any pending motions as moot. We withdraw our June 5, 2023 order staying the trial setting of June 12, 2023.


Julie Countiss
Justice

Panel consists of Chief Justice Adams, and Justices Hightower and Countiss.