**Affirmed and Opinion Filed May 28, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00411-CV

### CONTEMPORARY CONTRACTORS, INC., Appellant
### V.
### WILC/MVL, LLP AND SETTLEMENT INVESTMENTS MANAGEMENT CORP., Appellees

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-14470-C**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

This appeal from a bench trial on a breach of express warranty claim arises out of a contract to paint an apartment complex. The trial court found that Contemporary Contractors, Inc. ("Contractor") breached the express warranty in its contract with WILC/MVL, LLP and Settlement Investment Management Corp. ("WILC"). The Contractor brings six issues challenging the legal and factual sufficiency of the evidence to support the trial court's findings concerning liability and reasonable repair costs. Concluding that the Contractor's arguments lack merit, we affirm the trial court's judgment.

### I. Background

On January 19, 2009, the parties entered into a contract for the Contractor to replace and repair exterior wood on and to paint the exterior of the Marina Del Ray apartment complex in

Grapevine, Texas. The contract warranted that the work would be free of defects and would perform as intended for five years after completion.

WILC began to notice issues with the exterior paint about a year after the work was completed, and asked the Contractor to repaint the property. When the Contractor refused, WILC sued the Contractor for breach of the express warranty.

The trial court found that the Contractor breached the contract's express warranty and entered judgment in WILC's favor for $92,000 and attorney's fees. The trial court made findings of fact and conclusions of law to support the judgment. This appeal followed.

## II. Issues on Appeal and Standard of Review

In its first, second, third, and fourth issues, the Contractor challenges the legal and factual sufficiency of the evidence to support the trial court's findings that (i) the paint job failed, (ii) the Contractor is liable to WILC for breach of the contract's express warranty and (iii) the reasonable and necessary cost of repair is $92,000.[1] In its fifth and sixth issues, the Contractor globally asserts that "the trial court's findings are so contrary to the evidence as to be clearly wrong and unjust" and "there are no findings of fact or evidence to support the Trial Court's judgment."

Because, as discussed below, the evidence is factually sufficient to support the trial court's findings that the warranty was breached and that $92,000 was a reasonable and necessary repair cost, we need not and do not discuss the legal sufficiency issues. *See British Am. Ins. Co. v. Howarton*, 877 S.W.2d 347, 352 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd by agmt.).

In an appeal from a bench trial, we review a trial court's fact findings under the same sufficiency of the evidence standards used regarding jury findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of an adverse finding on an

---

[1] These issues challenge the trial court's conclusions of law numbered 2 and 3 and the court's findings of fact numbered 10 and 11.

issue on which it did not have the burden of proof at trial, it must show that there is factually insufficient evidence to support the adverse finding. *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.). To conduct this review, we examine the entire record and consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We must uphold the finding unless the evidence that supports it is so weak as to be clearly wrong or manifestly unjust. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight given to their testimony. *Helping Hands Home Care, Inc. v. Home Health of Tarrant County, Inc.*, 393 S.W.3d 492, 505–06 (Tex. App.—Dallas 2013, pet. denied). As such, the trial court may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We will not substitute our judgment for the trial court's merely because we might reach a different conclusion. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

We review the trial court's conclusions of law de novo. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.).

### III. Analysis

#### A. Is the Evidence Factually Sufficient to Support Contractor's Liability?

#### The Liability Dispute

The Contractor's liability depends on whether the evidence was sufficient to establish a breach of the express warranty included in the parties' contract. To recover for breach of an express warranty, a plaintiff must prove: (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmation of fact or promise; (5) that the plaintiff was injured

–3–

by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of the plaintiff's injury. *Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 407 S.W.3d 274, 292 (Tex. App.—Dallas 2013, pet. denied); *see also Paragon Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.) (breach of express services warranty).

Here, the first three elements are undisputed. The Contractor's liability issues instead challenge the court's determination that the paint job failed, that is, that the five year performance warranty failed. Specifically, the Contractor challenges the court's findings and conclusions that (i) by early spring 2012, the exterior areas of the apartments showed evidence that the painting had failed and that the paint job had faded and was peeling throughout the entire exterior of the complex, and (ii) the Contractor is liable to WILC for breaching the parties' express warranty. We examine these findings given the express warranty and the evidence adduced at trial. As discussed below, the primary liability dispute turns on the nature of the warranty at issue.

### The Warranty

The express warranty provides:

> All work described herein shall be warranted and guaranteed to be free of defects and failure and to perform as intended for a period of five years from completion.

This warranty has two parts: (i) to be free from defects and failure and (ii) to perform as intended for five years. A breach of either part breaches the warranty.

The Contractor, however, relies on *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex. 1987), to argue that in a breach of warranty case, the only requirement is that the work be performed in a good and workmanlike manner. According to the Contractor, the trial court "only found that the paint had failed," not that the Contractor failed to perform the work in a

–4–

good and workmanlike manner. The Contractor argues that the evidence is uncontroverted that the work was performed in accordance with the specifications (and that the paint used was equal to or better than the specified paint). It is thus presumed that the work was done in a good and workmanlike manner.

The Contractor's reliance on *Melody Homes* is misplaced. *Melody Homes* involved an implied warranty under the Deceptive Trade Practices Act, but the warranty here is a contractual express warranty. Whether the work was performed in a good and workmanlike manner is not at issue here. We instead consider whether the Contractor met the express warranty terms.

Generally, a warranty describes the character, quality, or title of the thing being sold. *See Chilton Ins. Co. v. Pate & Pate Enters, Inc*., 930 S.W.2d 877, 890–91 (Tex. App.—San Antonio 1996, writ denied). An express warranty is a definitive affirmation of fact or a promise that becomes part of the basis of the bargain and on which the parties rely. *Id*. at 891. Express warranties arise out of the parties' agreed terms and result from a negotiated exchange. *See Med. City Dallas, Ltd. v. Carlisle Corp*., 251 S.W.3d 55, 60 (Tex. 2008) (citations omitted). Here, the Contractor expressly promised that, at a minimum, the paint job would perform as intended for five years. That was an allocated risk that became part of the parties' bargain.

### Breach

George Martin, WILC's president, identified the January 19, 2009 contract between WILC and the Contractor for repainting and repairing the apartment complex. The contract required the Contractor to replace exterior wood, make repairs, and paint the entire complex exterior for $87,899. It completed the work about two to three months later.

Martin began to notice issues with the apartments' exterior paint in one particular area on the back side of the property about a year after the Contractor finished the work. The issues continued in that area, and then Martin began to notice other areas where the paint appeared to be

–5–

"sloughing off or sagging," and other areas where it was peeling badly. Martin identified these issues, as well as fading paint, in photographs that were admitted into evidence. Martin explained that he considered 100% of the property to be affected because the peeling, fading, and sloughing off was throughout the property.

In 2012, Martin hired architect Shannon Pearcey to review the contract and inspect the premises to determine whether the Contractor complied with the contract. Pearcey photographed the property and testified that the paint conditions shown in the photographs affected every building on the property except the new leasing office. Pearcey prepared a property condition report that was admitted into evidence without objection. That report included the site visit pictures, which she said show "failing paint on the siding, trim, fascia, etc." Pearcey opined that the paint was failing throughout the entire apartment complex.

The Contractor, however, argues the evidence is uncontroverted that "the paint itself did not fail." In this regard, the Contractor relies on the testimony of Christopher Heath. Heath, an employee of the paint supplier, testified that, although the paint used for the project was not the paint specified in the contract, the paint used was of equal or better quality. The company checked its retained paint sample and determined that it was manufactured within specifications.

After WILC complained, the Contractor asked Heath to inspect the property to evaluate what areas were affected by white staining on the siding. He determined that twenty to twenty-five percent of the property was affected. The white substance was a white cellulose-based material that was on top of the paint film. Heath opined that the white stains resulted from deteriorating siding. A report discussing Heath's evaluation was admitted into evidence. Heath acknowledged that one of the photographs of the property showed peeling paint, but he could not state whether that was caused by the siding. At one point, Heath said that "the paint didn't fail," but he also said "it [the paint job] didn't last five years. It just didn't."

–6–

Marion Whittington, a paint company sales representative, also testified for the Contractor. At the Contractor's request, Whittington inspected the property to "see if there [was] something going on with the paint." Whittington determined that wax was leaching out and off of the masonite material to the siding below, and "it was not a matter of the paint." Whittington said that, although the area could be repainted, the issue would just occur again because of the siding. On cross-examination, Whittington acknowledged that the "wax bleed" he described could come through the primer. When asked if the wax bleed would occur faster with a weaker primer, Whittington replied, "perhaps so."

The Contractor's president admitted that there were defects and that the paint was peeling and sloughing as shown on the photographs admitted into evidence. The Contractor's superintendent testified that he never checked to determine whether the paint and primer that were used complied with the contract specifications.

That the Contractor offered evidence suggesting that the paint itself was not defective and that the issues were caused by the siding does not mean WILC's evidence was insufficient. Instead, given the warranty requirement that the work would last for at least five years, we conclude that the trial court's determination that the warranty was breached is not so against the great weight of the evidence as to be manifestly unjust and to warrant a new trial. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

For the above reasons, we decide the Contractor's first, second, fifth, and sixth issue liability challenges against it. We consequently also decide the Contractor's legal sufficiency liability challenges in issues three, four, and six against it.

## B. Is the Evidence Factually Sufficient to Support the Damages?

Part of the Contractor's second issue challenges the factual sufficiency of the trial court's damages findings. In particular, the Contractor contends that the evidence is insufficient to

support the trial court's findings that $92,000 is the reasonable and necessary cost to replace the defective, peeling, and faded paint work.

Martin testified he has been in the multifamily property management business for more than thirty years, he was currently managing nine multifamily properties, and from that experience he is familiar with the cost of repair and repainting multifamily projects. He also said that it is something he does on a monthly and annual basis.

Martin asked the Contractor and its paint supplier to repaint the property. When they did not do so, he hired Five Star Contractors to repaint the property. After the Five Star contract was admitted into evidence over the Contractor's hearsay objection, Martin testified that (i) the paint cost needed to repaint the property was $26,000, (ii) the labor cost was $66,200, and (iii) based on his experience, these costs were reasonable and were paid.

The Contractor argues that the Five Star contract should not have been admitted into evidence and without that contract there is no evidence of the cost of labor for repainting. Contractor further asserts that Martin was not qualified to testify about the cost of repair, and his lay testimony contrasts with the Contractor's experts' testimony that the problem areas alone could have been repainted.

The Five Star contract was properly admitted into evidence. The Contractor argues that the estimate was hearsay because Five Star was not present to authenticate it. Hearsay and authenticity are distinct objections and the Contractor's argument in substance challenges only the exhibit's authenticity. Authenticity is a condition precedent to its admissibility. TEX. R. EVID. 901(a). Evidence sufficient to support a finding that the matter in question is what its proponent claims satisfies this requirement. *Id.* The testimony of a witness with knowledge of the relevant facts is one way to authenticate evidence. *Id*. 901(b)(1). Martin, who had such knowledge, authenticated the contract which bears his signature. The trial court did not abuse its

discretion by overruling the Contractor's objection. *See Bay Area Healthcare Grp, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (stating evidentiary rulings committed to trial court's sound discretion).

Although the Contractor also complains that Martin was not qualified to testify about reasonable repair costs, this objection was not asserted at trial. Moreover, even had the issue been preserved, his testimony together with the Five Star contract were sufficient to support the damages. *See Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.).

Contractor's argument about conflicting testimony regarding damages is similarly unpersuasive. Such conflicts involve weight and credibility determinations. An appellate court cannot pass upon a witness's credibility or substitute its judgment for the fact-finder's, even if there is conflicting evidence that would support a different conclusion. *See Cain v. Bain* 709 S.W.2d 175, 176 (Tex. 1986). The trial court, as the factfinder, was free to believe Martin and Pearcey's testimony that the entire property needed to be repainted, and Martin's testimony that the reasonable cost to do so was $92,000. We thus overrule the Contractor's third issue. *See British Am. Ins. Co.*, 877 S.W.2d at 352.

## IV. Conclusion

Having resolved all of the Contractor's issues against it, we affirm the trial court's judgment.

140411F.P05

/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CONTEMPORARY CONTRACTORS, INC., Appellant

No. 05-14-00411-CV          V.

WILC/MVL, LLP AND SETTLEMENT INVESTMENTS MANAGEMENT CORP., Appellees

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-14470-C.
Opinion delivered by Justice Whitehill. Justices Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees WILC/MVL, LLP AND SETTLEMENT INVESTMENTS MANAGEMENT CORP. recover their costs of this appeal from appellant CONTEMPORARY CONTRACTORS, INC..

Judgment entered May 28, 2015.